206 A.2d 642.

JAMES HILL *vs.* A. L. A. CONSTRUCTION CO., INC.

FEBRUARY 5, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

CONDON, C. J. This is an action of trespass on the case for negligence which was tried to a jury in the superior court and resulted in a verdict in the sum of $18,000 for the plaintiff. Thereafter the defendant's motion for a new trial was denied. The case is here on its bill of exceptions to such denial, to the denial of its motion for a directed verdict, and to the trial justice's action in allowing certain testimony to be read to the jury in response to their request made some time after they had retired to consider their verdict.

The plaintiff predicated his cause of action on an injury which he received on May 4, 1959 as a result of the alleged negligent act of an employee of defendant. The incident occurred at the city of Pawtucket's Stump Hill Reservoir in the town of Lincoln. At that time plaintiff was working on the floor of the reservoir in the company of certain other employees of the city. On the rim of the reservoir, about 23 feet above the floor, defendant had a force of men, including three carpenters, who were doing certain work on the rim under a contract which defendant had with the city.

The work being done on the rim was preparatory to defendant constructing an aluminum cap over the reservoir. The city's employees were engaged in cleaning the floor of the reservoir. To make possible the doing of such work and the performance of defendant's contract the reservoir had been emptied.

On the morning of May 4 the city's employees were cleaning the floor at a point in approximately the southwest section of the reservoir, directly below the rim where defendant's employees were working. From that point two pieces of lumber about two-by-four were thrown or dropped from the rim, one of which struck plaintiff in the back of his neck and right shoulder, knocking him unconscious.

Two of plaintiff's fellow laborers saw the falling pieces of lumber but neither could tell who threw or dropped them, but both testified that they came from the rim where defendant's employees were working. One of the witnesses testified that he heard someone holler "Throw down the lumber" and that when he looked up he saw a light-complected fellow whom he did not know throw down two pieces of lumber into the reservoir. He further testified that the man was dressed in work clothes and wore a blue baseball cap.

The defendant presented only two witnesses, its president and its superintendent. The latter was in immediate charge of its employees who were working on the rim on the day of the accident. The president testified that defendant never received any notice from plaintiff of a claim against it for an accident caused by its employee or employees on May 4, 1959, and that the first time it was made aware of such a claim was "a good two years later" when it was served with plaintiff's writ. He further testified that the company had a superintendent on the job at the reservoir who was required to be there daily while the work was in progress.

The superintendent testified that he was in complete con-

trol of the job for defendant; that he did not personally see plaintiff struck by a two-by-four piece of lumber on May 4, 1959; that he never received any report from any of his employees that plaintiff had been struck on that date as a result of the action of any one of them; and that during the whole period defendant was on the job at the reservoir neither plaintiff nor anyone in his behalf had ever reported to him that plaintiff had been injured as a result of such action.

In direct examination he testified that in the early part of May 1959 he had among his other employees three carpenters who were building an outhouse, a field office and doing work on the wall. He admitted the carpenters were using wooden forms, sized two by eight made of "plywood face and two by fours nailed to the back side," but he further testified that the forms were constructed off the job at defendant's yard on Atwood avenue and that it was not necessary to use any additional two-by-fours on the job to join the several forms together.

On cross-examination he admitted that he had asked the carpenter foreman, Reginald Sherman, whether or not one of his men had thrown this two-by-four. He did not inquire of the other two carpenters concerning the matter. The defendant did not call any of them to testify nor did it indicate for the record that they were unavailable as witnesses.

On this state of the evidence defendant moved for a directed verdict on the ground that there was no evidence to go to the jury that identified the person who threw the object which is alleged to have struck and injured plaintiff. The trial justice denied the motion for the reason substantially that there was evidence from which it could be reasonably inferred that a two-by-four was thrown by one of defendant's employees who was working with such material on the rim of the reservoir. He relied further upon the fact that there was no evidence any of the employees of the city

were working on the rim or that they were using two-by-fours. Another inference favorable to plaintiff he felt could be reasonably drawn by the jury from the circumstance that though the carpenters were admittedly using two-by-fours defendant did not call any of them to testify. He concluded, "that there was enough circumstantial evidence for the Jury in passing upon the question of whether or not the individual or individuals who actually threw the object were or were not employees or servants of the defendant corporation."

As is well known, in considering defendant's motion for a directed verdict the trial justice was bound to draw all reasonable inferences from the evidence favorable to plaintiff and to refrain from weighing the evidence and passing upon the credibility of the witnesses. *O'Brien* v. *Waterman*, 91 R. I. 374. After a careful examination of the entire transcript we have found nothing therein which would warrant us in finding that the trial justice erred in denying defendant's motion. On the contrary viewing all the evidence consistently with the above rule in mind as we also are bound to do, *Priestley* v. *First National Stores, Inc.*, 95 R. I. 212, 186 A.2d 334, we are clearly of the opinion that it was properly denied. The defendant's exception to such denial is therefore overruled.

The next question to be determined is whether the trial justice erred in denying defendant's motion for a new trial. While the motion is based on the usual grounds that the verdict is against the law, against the evidence, the law and the evidence and the weight thereof and that the damages are grossly excessive, it appears from its brief and argument before us that defendant now contends only that the verdict is contrary to the weight of the evidence and that the damages are grossly excessive. In support of its exception to such denial defendant contends that on the issue of liability the trial justice overlooked and misconceived evidence which it argues furnished an explanation of how the

accident to plaintiff could have happened without involvement therein by any of defendant's employees.

Our examination of the transcript does not reveal any support for such contention. Without repeating the testimony referred to earlier in our consideration of defendant's exception to the denial of its motion for a directed verdict we are of the opinion that it furnished a sufficient basis for the trial justice's approval of the verdict. We were unable to discover in the record anything of substantial weight that would justify a finding that the verdict on liability was contrary to the weight of the evidence.

On the question of damages it is sufficient to say that defendant presented no evidence to counteract the detailed testimony of plaintiff's medical witness as to the serious nature of his injury, the consequent pain and suffering it entailed, and its partially disabling effect for the future, making it impossible for him to follow his former usual employment as a laborer. Nor was there any evidence presented by defendant to counter the testimony of plaintiff as to his loss of wages and his medical expenses amounting in the aggregate as the trial justice estimated to $5,000. He pointed out in his decision that this left of the verdict about $12,000 to $13,000 to be allocated to pain and suffering and partial disability.

In considering whether the damages were reasonable the trial justice in the exercise of his independent judgment discussed and weighed the evidence bearing on those elements. He concluded that in the circumstances there was ample evidence to support the jury's award and he did not feel it was excessive. Unless we can find from our consideration of the record that his decision on either liability or damages was clearly wrong we cannot disturb it. *Harju* v. *Shelby Mutual Casualty Co.*, 91 R. I. 294. After carefully examining the transcript we are unable to find anything therein that would reasonably warrant our doing so, there-

fore defendant's exception to the denial of its motion for a new trial is overruled.

However, there is a final question whether defendant should be granted a new trial because of an alleged prejudicial error committed by the trial justice in allowing certain testimony to be read to the jury in response to the following question addressed to him upon their return to the courtroom after they had retired to consider their verdict: " 'Has there been established in direct evidence if City of Pawtucket men at the time of the accident were all in the pit?' " The trial justice thereupon replied: "Rather than answer that question one way or the other I have instructed the young lady [the court stenographer] to read back some testimony from a witness, Mr. Keith." That testimony was substantially to the effect that the city employees were all working in the pit and none outside the reservoir. It was also to the further effect that defendant's employees were working on the rim above the point where the city's employees were working. The defendant did not object to consideration of the request when it was made nor to the trial justice's selection of the portion of the testimony. But after the jury had again retired to the juryroom it asked for such an exception and the court noted it.

If it were necessary to do so we would be constrained to hold that the exception came too late and was abortive. The defendant made no objection to the inquiry of the jury. It made no objection to the reading of the testimony selected by the trial justice. Therefore there was no ruling to which an exception would lie. Having stood silently by without raising any question as to its right to have the jury's request rejected it ill becomes defendant tardily to claim that it was prejudiced by the trial justice's action in seeking to comply with what appeared to be a proper request of the jury to which there was no objection.

However, on our view of the real nature of the jury's inquiry we think defendant suffered no prejudice as a result

of the trial justice's action. If read literally the inquiry would appear to be a request for testimony that would support at least a part of plaintiff's case. But we do not think it should be so read. If the word "established" were not in the question there would not be any difficulty. We do not construe it to be the key to a true understanding of the query. In reality what the jury were seeking was not proof of the fact in question but simply some assistance from the record by way of refreshing their recollection that there was testimony at some point in the trial which bore on the question whether all of the employees of the city were in the pit. It would appear that the trial justice so construed the question and had the stenographer check back in her notes for such testimony if any. When it was found he had it read back to them without comment other than to ask if it answered their question and to admonish them, "It is up to you people to draw your own inferences from the testimony."

We may add that the particular item of evidence even if it were erroneously allowed to be read was not of sufficient consequence to vitiate the trial. Whether or not all the city employees were in the pit was by no means of decisive weight in the determination of the real question at issue, namely, was the piece of lumber that was thrown by someone on the rim of the reservoir where the defendant's employees were working the negligent act of one of them. The defendant's exception, assuming it was properly taken, is without merit and is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*John F. McBurney,* for plaintiff.

*Francis V. Reynolds, Leonard A. Kiernan, Jr.,* for defendant.