216 A.2d 880.

JOHN H. BURKE *vs.* FREDERICK RUSSELL BLOCK.

FEBRUARY 17, 1966.

PRESENT: Roberts, C. J., Paolino, Powers and Joslin, JJ.

POWERS, J. This is an action of trespass on the case for negligence arising out of a rear-end collision on a public highway in this state. It was tried to a jury before a superior court justice and resulted in a verdict for the plaintiff. The case is before us on the defendant's bill of exceptions, to certain evidentiary rulings, to the refusal of the trial justice to charge the jury as requested, to certain portions of the charge as given, and to the denial of the defendant's motion for a new trial.

The evidence discloses that on Saturday, December 17, 1960, plaintiff was a passenger in the rear seat of a motor vehicle being operated by his son on the Nooseneck Hill section of route 95. The car was traveling easterly when it was struck with apparently considerable force from the rear by defendant's car. The plaintiff was first thrown forward against the front seat and as the car in which he was riding went into a skid, almost turning over, he was thrown backward with equal violence.

It is plaintiff's testimony that immediately after the collision his neck was bothering him and, as he says, "* * * I was, of course, all shoke [sic] up and nerved up"; that although at first he thought there was nothing seriously wrong, he found that after arriving home he was experiencing pain in his neck, shoulder and a dull but constant headache. He did not seek medical assistance, however, until December 22, five days after the accident.

The evidence further discloses that plaintiff was a union bricklayer earning $4 an hour in the employ of A. C. Beals Co., Inc. before and after the day of the accident. His injuries were sustained on Saturday and he returned to his employment the following Monday.

Doctor Edward Asprinio, whom plaintiff originally consulted, testified that when he first saw plaintiff he was suffering from spasm of the cervical and trapezoid muscles, resulting in a stabbing, burning pain in the neck with limitation of motion; that this condition was directly attributable to the injury plaintiff sustained in the accident; that he prescribed vitamin B12, some heat and a muscular-skeletal relaxant; and that he continued to treat him until March 14, 1961, when he referred him to Dr. William F. Garrahan, an orthopedic surgeon.

Doctor Garrahan testified that he first saw plaintiff on March 27, 1961 and found him suffering from a moderate amount of muscle spasm in the neck with limitation of motion; that considering plaintiff's age and the nature of his injury, his condition was about what would be expected at that time in light of the described accident; and that he was given a program of physiotherapy receiving eleven intermittent traction treatments to the neck until April 26, 1961. Doctor Garrahan saw plaintiff thereafter on May 13 and June 3, 1961. The plaintiff reported improvement with ability to tolerate such discomfort as remained.

Prior to trial, defendant requested a bill of particulars, the relevant inquiry thereof being as follows:

"6. An itemized statement of the wages and earnings alleged to have been lost by reason of the plaintiff's alleged disability, including:

"a) the length of time the plaintiff is alleged to have been unable to perform his usual occupation;

"b) the nature of the plaintiff's usual occupation;

"c) the name of his employer; and

"d) the amount of weekly wages and earnings."

Responding thereto, plaintiff furnished the following information:

"6a. The plaintiff was unable to perform his usual occupation from the date of the accident (December 17, 1960) through the remainder of the entire month of December; the plaintiff was unable to perform his usual occupation for the entire month of January 1961, with the exception of 26½ hours of employment performed during the week ending January 20, 1961; the plaintiff was unable to perform his usual occupation from February 1, 1961, through February 13, 1961.

"6b. The plaintiff's usual occupation is that of a Union bricklayer.

"6c. Immediately prior to the accident of December 17, 1960, the plaintiff was employed by the A. C. Beals Construction Company.

"6d. The plaintiff's weekly wages and earnings amount to $160.00 for a forty-hour week calculated at the rate of $4.00 an hour for the first forty hours. The plaintiff earns between $6.00 and $8.00 per hour for each hour in excess of forty hours worked during one week."

The parties having stipulated defendant's negligence and plaintiff's exercise of due care, the case was tried solely on the issue of damages.

In addition to the pain described by plaintiff he also testified that he suffered from sleeplessness and anxiety, for which latter symptom medication was prescribed. This testimony was corroborated by Dr. Garrahan.

The exceptions here under review, however, go to the admissibility of plaintiff's testimony as to the loss of earnings allegedly resulting from the accident. It is to be noted that in his bill of particulars plaintiff stated that he was unable to work from the day of the accident through the remaining days of December, but at the trial he testified that he returned to work on Monday, December 19, 1960, and worked each day until the job with A. C. Beals was

completed on December 28, 1960. This discrepancy is not before us quite probably for the reason that, inuring to defendant's benefit, it was not prejudicial. The work for A. C. Beals was performed at the Charles V. Chapin Hospital in Providence.

However, over eleven objections, each of which was preserved by an exception, plaintiff was permitted to testify that he had been offered a job at the Howard building following the completion of the work for A. C. Beals; that he was unable to take this job because of incapacity resulting from the accident; that he did not work in the month of January, except for 26½ hours in the week ending January 20, 1961; that this work was with John Benson; and that he did not thereafter return to work until February 13, 1961.

In support of these exceptions, defendant vigorously contends that the admissibility of such evidence constituted prejudicial error in that plaintiff was limited by his bill of particulars to earnings lost during his employment with A. C. Beals. He argues that the case falls squarely within the ruling of this court in *Jackson* v. *Choquette & Co.*, 78 R. I. 164. There at page 170 this court stated: "It is settled that the purpose of a bill of particulars is to give the defendant fair notice of the nature and extent of the claim against him to prevent surprise." *Tourgee* v. *Rose*, 19 R. I. 432; *Gorton* v. *Johnson*, 23 R. I. 138. Upon furnishing such a bill plaintiff is bound thereby. *Lovegrove* v. *Rogers*, 70 R. I. 83.

The facts of the *Jackson* case, however, are markedly different from those in the case at bar. There plaintiff Jackson, injured in an accident on January 3, 1949, stated in his bill of particulars that by reason of the accident he had been unable to carry on with his usual employment and sustained a loss of wages thereby. His bill further related that his usual employment was operating a greasing machine for Blacher Brothers, Inc. At the trial it was revealed

that the plaintiff had lost his employment with Blacher Brothers prior to the accident and was not permitted to testify as to other employment which he might have found except for the accident of January 3, 1949.

A fair reading of the bill of particulars in *Jackson* v. *Choquette & Co., supra,* led defendant reasonably to believe that the plaintiff was claiming loss of wages while in the employ of Blacher Brothers. In sustaining the trial justice's exclusion of testimony designed to show other possible employment, this court stated at page 171: "It requires no discussion to conclude that under the above well-settled rule the plaintiff in the instant case plainly failed to establish his claim of loss of wages while in the employ of Blacher Brothers, Inc."

In the instant case, however, responding specifically to defendant's motion for a bill of particulars, plaintiff stated that his employment immediately prior to the accident was with A. C. Beals Construction Co.; that his usual occupation was that of a union bricklayer; that he earned $4 an hour, or $160 for a 40-hour week; and that except for $26\frac{1}{2}$ hours in the month of January he was unable to work from the date of the accident to February 13, 1961. At the trial it developed that after the accident plaintiff did work to December 28, 1960, but as previously noted defendant was not prejudiced by plaintiff's testimony admitting such employment.

In all other respects the plaintiff fairly answered the inquiries framed by defendant. That union bricklayers are customarily employed out of the union hall and work for different construction companies is so well understood as a fact of industrial life as to require no discussion. If defendant was not satsified with the extent of the information furnished in the bill of particulars, he was at liberty to inquire further. The trial justice, therefore, did not err in ruling that plaintiff was not precluded by his bill of particulars from testifying as to time lost from his usual em-

ployment with employers other than A. C. Beals. The first eleven exceptions are therefore overruled.

The defendant's next three exceptions are to the failure of the trial justice to charge the jury that there was no competent evidence that plaintiff had sustained any loss of wages for which damages could be assessed. His argument in this regard is premised on the proposition for which he contended in connection with the first eleven exceptions and are therefore lacking in merit.

His fifteenth and sixteenth exceptions, being to portions of the charge as given, combine arguments previously considered and found to be without merit, with the additional argument that plaintiff's testimony as to lost opportunities with other employers, even if not barred by the bill of particulars, was incompetent as being hearsay and speculative. We find no merit in this latter argument. The plaintiff identified the jobs, the nature of the bricklaying involved, and indeed did accept one of them on which, however, he was able to work only 26½ hours in January because of his injury. Moreover, under cross-examination plaintiff identified this employer by name and address. In our judgment the challenged testimony was competent and open to question only as to weight. These exceptions are also overruled.

Finally, defendant contends that the trial justice erred in denying his motion for a new trial or, in the alternative, refusing to reduce the verdict as grossly excessive. In support of this contention he makes two arguments, the first being that the trial justice, in effect, overlooked and misconceived material evidence on the issue of lost wages. He points to the fact that plaintiff did not visit Dr. Asprinio between December 22, 1960 and February 2, 1961; and further, that he was not referred to Dr. Garrahan until March 14, 1961, a full month after the time within which he claims he was unable to work. These factors, he urges, destroy any inference which might be drawn as to his incapacity

for work by reason of defendant's negligence. We are unable to agree. In his decision on defendant's motion, the trial justice expressly disposed of this argument. He stated that in his opinion plaintiff was not a malingerer; that he worked whenever it was at all possible, enduring considerable discomfort throughout; and that he sought medical assistance in an effort to keep working. Our review of the transcript and the trial justice's decision satisfies us that he neither overlooked nor misconceived material evidence on the issue in question.

Even so, defendant further argues that the verdict was grossly excessive on all the evidence without regard to its competency. The medical bills and cost of medication totaled $162.80 and the jury returned a verdict of $3,000. The defendant argues, in effect, that plaintiff's pain and suffering were slight as was the amount of time that he claimed to have lost from work. The out-of-pocket expenses, lost wages, and pain and suffering disclosed by the record, and taken together, he contends, do not justify the jury's verdict.

The trial justice correctly pointed out that the jury would have been justified in finding that plaintiff had sustained a loss of wages from $800 to $960 which, added to out-of-pocket expenses, constituted direct damages in excess of $1,000. Commenting that while he might consider the award for pain and suffering as being more than he would award, he rightfully acknowledged that the members of the jury, out of their personal experiences, might well be in a better position than he to place a dollar value on the pain and suffering. For this reason, he concluded that the verdict did not shock the conscience of the court and, believing the verdict did do justice between the parties, that it should not be disturbed. In such circumstances his decision will not be set aside. *Chisholm* v. *S. S. Kresge Co.*, 55 R. I. 422.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Philip W. Noel,* for plaintiff.

*Higgins, Cavanagh & Cooney, Joseph V. Cavanagh,* for defendant.