222 A.2d 776

MARION D. NICHOLSON *vs.* NARRAGANSETT TASTEE-FREEZ COMPANY, INC.

GARDINER J. NICHOLSON, JR., *p.p.a. vs.* SAME.

SEPTEMBER 28, 1966.

PRESENT: Roberts, C. J., Paolino, Powers and Joslin, JJ.

PAOLINO, J. These two actions of trespass on the case for negligence were brought by a mother and her minor son p.p.a. to recover for personal injuries suffered by the son and consequential damages sustained by the mother allegedly resulting from the negligence of the defendant's servants and agents. The cases were consolidated for trial and heard together before a justice of the superior court sitting with a jury which returned a verdict for the defendant in the mother's case and for the son in his case. Thereafter the trial justice granted the defendant's motion in each case for a directed verdict and denied the mother's motion for a new trial in her case. The cases are before us on the plaintiffs' exceptions to such rulings.

The declaration in each case alleges in substance that it was the duty of defendant, having undertaken to repair an ice-cream machine leased by Mrs. Marion D. Nicholson from defendant, to use reasonable care to leave it in a reasonably safe condition so that persons using it in the exercise of due care should not be injured; that defendant carelessly and negligently left the equipment "open and unguarded," thereby causing a dangerous condition to exist as a result of which the minor son was injured and the mother sustained consequential damages.

The operative facts are substantially as follows. In August 1956 Gardiner, then sixteen years of age, lived with his mother and worked with her in running a "soft ice cream store called the Tastee-Freez" which she leased from defendant corporation. There were two ice-cream-making

machines in the store. They were automatic-type machines which turned on automatically when the temperature reached a certain point. The backs of the machines were toward the wall, with a space of between 2 to 2-½ feet between the machines and the wall which could be used for servicing and inspecting them.

Mrs. Nicholson testified that if it was necessary to service the machines she would call Mr. Gordon W. Moore, an officer of defendant corporation, and that on August 29, 1956 she called defendant corporation because they had not been working properly; that Mr. Moore came in the early afternoon that day and worked on the machines; that after he left she observed that the guards on the back of the machines had not been replaced and were standing against the wall behind them; that this was the first time the guards had been left off after servicing; and that she and her son attempted to put them back but they were unable to find the screws which secured them.

Mrs. Nicholson further testified that when Mr. Moore left on August 29, he left instructions for the son to grease the machine if "we had the same difficulty"; that on August 30 she and her son filled the machines with mix; that the guards were still off and leaning against the wall; that while her son was out for lunch, one of the machines stopped working; that they decided to grease it; that her son got the grease gun and as his mother was facing him he held the gun in his right hand and the base of it with his left hand; that when he started to grease the machine it was stopped; that while greasing it, the motor started and her son's hand disappeared and he screamed; that she turned the machine off with the switch on the front side; and that on going to the back of the machine she saw his hand caught under the large wheel.

The operation of the machine is controlled by a single switch on the front having three positions: off, manual and

automatic. When the switch was on "Off" nothing moved; when it was on "Manual," the machine operated all the time; and when it was on "Automatic," the machine was on a cycle that went on and off. The trouble with the machine, according to plaintiffs' testimony, was that, when the machine was on automatic setting, it would turn off and would not come back on. The machine was greased by means of a grease gun coming in contact with a little knob on the top right-hand side six inches back from the edge of the machine.

Gardiner testified that he ordinarily greased the machine twice a week; that he had never tried to grease it with the guard off prior to the day he was injured; that in greasing the machine he stood with his back to the wall; that holding the gun with his left hand he was pressing with his right, and as he started to press the gun the machine suddenly cycled on and the vibration caused his hand to slip off, fall down and hit the wheel; that it was carried under the wheel; and that as he screamed his mother turned the machine off.

Gardiner also testified that he knew that the wheel was there, knew that if he got his hand inside the machine he would be hurt, knew enough to keep his hand out of the machine, knew that the back guard was off, and knew how to turn the machine off so that it would not get back into cycle; that he did not do this because he did not think of it; and that except this one time he was always careful to turn off the machine when he was tearing it down because he realized the danger of being injured by moving parts.

Mr. Moore admitted that there was some vibration when the machine was running, and that he was fully aware of the fact that if someone accidentally put his hand in the wheel with the guard off he would get hurt.

As already indicated, the trial justice reserved decision on defendant's motion for a directed verdict in each case

and submitted the cases to the jury. After it returned a verdict for defendant in the mother's case and for the son in his, the trial justice granted directed verdicts in both cases. He held in substance that, even if it were assumed that defendant was negligent, Gardiner was guilty of contributory negligence as a matter of law "in not taking satisfactory precautions by the simple expedient of turning the machine off before attempting to grease the same." He concluded that Gardiner's negligence, and not that of defendant, was the proximate cause of the resulting injury to him.

We agree with plaintiffs' statement that in this state the question of a plaintiff's contributory negligence is usually a question of fact for a jury, and only rarely a question of law. *Taglione* v. *Tourtellot & Co.*, 100 R. I. 292, 214 A.2d 853. But, as the court said in that case at page 856, "we have no hesitancy in holding that in a proper case a trial justice undoubtedly has the power to treat the issue of contributory negligence as a question of law and to determine the motion for a directed verdict accordingly."

We inquire whether the facts in this case are such that it was proper for the trial justice to treat the issue of contributory negligence as a question of law. Is the evidence so clear that only one reasonable inference can be drawn therefrom, namely, that Gardiner's contributory negligence contributed to his injuries? Are the facts such that a person of ordinary prudence would have instantly perceived what to have done or what to have refrained from doing? The rule in this state governing the duty of a trial justice in passing on a motion for a directed verdict requires him to view the evidence in the light most favorable to the adverse party, to draw all reasonable inferences from the evidence favorable to that party, and to refrain from weighing the evidence and passing upon the credibility of the witnesses. *Hill* v. *A.L.A. Construction Co.*, 99 R. I. 228,

206 A.2d 642. If on any reasonable view of the evidence the jury could have found for Gardiner, the verdict should not have been directed for defendant. *McVeigh* v. *McCullough*, 96 R. I. 412, 418, 192 A.2d 437, 441.

The probative force of the uncontradicted evidence in the case at bar is susceptible of only one reasonable inference, namely, that plaintiff was not in the exercise of due care and was therefore guilty of contributory negligence as a matter of law. In our opinion the facts are such that a person of ordinary prudence would instantly perceive what to do or what to refrain from doing. *Floyd* v. *Turgeon*, 68 R. I. 218, 224. He would not do what Gardiner did in this case. After carefully examining the entire transcript we find nothing which would warrant us in holding that the trial justice erred in granting defendant's motions. Viewing the evidence in accordance with the rule governing the trial justice in passing on a motion for a directed verdict, as we also are bound to do, *Priestly* v. *First National Stores, Inc.*, 95 R. I. 212, we hold that the evidence supports the trial justice's decision granting defendant's motion for a directed verdict in Gardiner's case. His exception to such ruling is therefore overruled.

Since the liability in Mrs. Nicholson's action depends upon the liability in her son's case, the decision in his case is dispositive of her exception to the granting of the directed verdict for defendant in her case. Her exception to the granting of the directed verdict is therefore also overruled. In the circumstances her exception to the denial of her motion for a new trial is without merit.

We have examined the cases cited by the plaintiffs on the question of contributory negligence. They are factually so distinguishable from the case at bar as to require no further discussion.

All of the exceptions of the plaintiffs are overruled, and

each case is remitted to the superior court for entry of judgment on the verdict as directed by the trial justice.

*Charles H. Anderson,* for plaintiffs.

*Boss, Conlan, Keenan & Rice, John T. Keenan,* for defendant.