315 A.2d 744.

ROBERT WOOD *vs.* V. J. PAOLINO *et al.*

MARCH 6, 1974.

PRESENT: Joslin, Kelleher and Doris, JJ.

754

JOSLIN, J. This civil action was brought in the Superior Court to recover damages for injuries allegedly sustained when on September 17, 1966, the defendant V. J. Paolino,[1] mistakenly believing that certain profane remarks uttered by the plaintiff had been directed against him, grabbed the plaintiff around the neck and kneed him in the back. The case was tried to a jury which returned a verdict for the plaintiff in the amount of $13,000 for compensatory damages and nothing for punitive damages. After judgment had entered and on the defendant's motion, the trial justice ordered a new trial solely on the issue of damages unless the plaintiff would remit all of the verdict in excess of $5,000. Both parties appealed, but the defendant's appeal was withdrawn before the case was argued here. Thus, the only question before us is whether the trial justice erred in finding that the verdict was grossly excessive.

We have frequently said that the fixing of damages, while initially a jury's responsibility, may be interfered with by a trial justice on a motion for a new trial if, in the exercise of his independent judgment in passing upon the evidence adduced with respect thereto, he finds that the award is grossly in excess of an amount adequate to compensate for the injuries sustained. *Simmons* v. *United Transit Co.*, 99 R. I. 460, 461-62, 208 A.2d 537, 538 (1965); *Cioe* v. *Pennacchia*, 88 R. I. 133, 136, 143 A.2d 288, 289 (1958).

We have further said that in exercising that judgment the trial justice, while he need not exhaustively analyze the evidence or state all his conclusions on its weight or the witnesses' credibility, should at least refer sufficiently to what prompts his action in order to enable a reviewing court to determine whether his interference with the verdict was based upon a misconception or oversight of ma-

---

[1] V. J. Paolino's employer was also named as a defendant, but the case against it was dismissed prior to trial.

terial evidence or was otherwise clearly wrong. *McVeigh* v. *McCullough*, 96 R. I. 412, 428, 192 A.2d 437, 446-47 (1963); *Calci* v. *Brown*, 95 R. I. 216, 222, 186 A.2d 234, 238 (1962); *Hulton* v. *Phaneuf*, 85 R. I. 406, 416, 132 A.2d 85, 91 (1957).

In this case, it seems to us that the trial justice did not meet these requirements. Instead, without in any way detailing what testimony he was accepting and what he was rejecting, or which witness he believed and which he disbelieved, he said only that plaintiff was entitled to $5,000 which he allocated in the following manner: $500 for medical expenses, $3,000 for loss of earnings and $1,500 for pain and suffering. Anything more than $5,000, he said, was "grossly excessive."

While our examination of the record discloses an evidentiary basis for the amount the trial justice allowed for medical expenses, it also reveals that he misconceived the evidence with respect to plaintiff's loss of earnings. That evidence, even when looked at most favorably to defendant, indicates that plaintiff was physically unable to work for at least 34 weeks, and that his loss of earnings for that period, based upon an average pre-injury weekly earning capacity of $144, was $4,896 rather than the $3,000 allowed by the trial justice in his computation.

That misconception of material evidence was compounded by the trial justice's failure to allude anywhere in his decision to what in the testimony concerning pain and suffering caused him to disturb what we generally consider a matter peculiarly within the jury's province. *Simmons* v. *United Transit Co.*, *supra* at 463-64, 208 A.2d at 538-39; *Raiff* v. *Yellow Cab Co.*, 93 R. I. 474, 477, 176 A.2d 718, 720 (1962). This does not, of course, mean that a jury's award of damages for pain and suffering is exempt from review by the trial justice, but it does mean that a trial justice will be justified in disturbing such an award only

if he is satisfied that there is a demonstrable disparity between the amount awarded and the pain and suffering shown to have been endured as a consequence of the injuries sustained. *Young* v. *Coca-Cola Bottling Co.,* 109 R. I. 458, 473, 287 A.2d 345, 353 (1972); *Romanelli* v. *A.B.C. Inc.,* 104 R. I. 689, 693-94, 248 A.2d 598, 601 (1968); *Fusaro* v. *Naccarato,* 103 R. I. 324, 326, 237 A.2d 545, 546-47 (1968); *Tilley* v. *Mather,* 84 R. I. 499, 502, 124 A.2d 872, 874 (1956).

We have also said that a jury's award for pain and suffering may be disregarded by the trial justice on a motion for a new trial only if it shocks the conscience or clearly demonstrates that the jury was influenced by passion or prejudice, or that it proceeded upon a clearly erroneous basis in arriving at its award. *Ruggieri* v. *Beauregard,* 110 R. I. 197, 201, 291 A.2d 413, 415 (1972); *Burke* v. *Block,* 100 R. I. 460, 467, 216 A.2d 880, 883-84 (1966); *Raiff* v. *Yellow Cab Co., supra* at 477, 176 A.2d at 720; *Broccoli* v. *Krzyston,* 87 R. I. 41, 45, 137 A.2d 740, 742 (1958).

In this case the trial justice's misconception of the evidence as to plaintiff's loss of earnings and his failure to indicate reasonably the basis for his conclusion that the award for pain and suffering was grossly excessive deprive his decision of the persuasive force to which it would normally be entitled. *Devine* v. *United Electric Rys.,* 85 R. I. 170, 172-73, 128 A.2d 334, 335 (1957); *Tilley* v. *Mather, supra* at 502-03, 124 A.2d at 874.

In these circumstances we ignore the trial justice's decision and apply the appellate rule. *Coia* v. *Eastern Concrete Products Co.,* 85 R. I. 128, 136, 127 A.2d 858, 862-63 (1956). That rule, as it relates to the question of damages for pain and suffering, raises somewhat different problems from those encountered when the issues are liability or damages for out-of-pocket expenses. *Cartier* v. *Liberty*

*Laundry, Inc.,* 49 R. I. 12, 139 A. 473 (1927). In the latter instances we look to the record to ascertain for ourselves whether there is any competent evidence which, if accepted as truthful, will sustain the verdict. *Bookbinder* v. *Rotondo,* 109 R. I. 346, 359-60, 285 A.2d 387, 394 (1972); *Gilbert* v. *Girard,* 109 R. I. 68, 74, 279 A.2d 919, 923 (1971). The adequacy of damages for pain and suffering, however, is determined by an exercise of our judgment and an application of our experience in the affairs of life and our own knowledge of social and economic matters. *Quince* v. *State,* 94 R. I. 200, 204-05, 179 A.2d 485, 487 (1962); *Cartier* v. *Liberty Laundry, Inc., supra* at 14, 139 A. at 474.

To apply that standard requires a consideration of the record. It discloses that plaintiff was treated by Dr. John J. Vallone from shortly after he sustained his injury until October 17, 1966, when he consulted Dr. Amedeo L. Mariorenzi, an orthopedic surgeon. Doctor Mariorenzi found that plaintiff was suffering from paracervical muscle spasms, was in pain, and was incapable of being gainfully employed. Muscle relaxants, medication for the pain, cervical traction and physical therapy in the form of diathermy to the lower back were prescribed; the doctor also recommended that plaintiff take hot baths twice a day and that he apply hot packs to his neck. Relief was obtained and on December 8, 1966, the doctor found that plaintiff's condition had gradually improved to a point where, although still experiencing tenderness and discomfort in the lower back, he could attempt to return to work.

Thereafter, plaintiff performed odd jobs and then, early in May 1967, took a job operating a backhoe. After about two weeks of that work and a day of driving a truck he experienced extreme pain and discomfort in the lower back, which radiated down his lower right leg. He returned to Dr. Mariorenzi who noted a tilt of his pelvis, muscular

spasms in the lower part of the back, and a restraint of motion of the back in all directions. For plaintiff to return to work in that condition was out of the question, and to relieve him Dr. Mariorenzi once again prescribed physical therapy, hot baths, muscle relaxants and medication for the pain. He also fitted plaintiff for a back corset with sturdy steel stays. This treatment continued until October 10, 1967, when plaintiff, who no longer complained of pain and discomfort, was found to have complete range of motion in his back. He was then discharged and, although advised to continue using a lumbosacral support, was told that he could return to light work on October 16, 1967.

During the periods of disability and treatment described, plaintiff visited Dr. Vallone's office 3 or 4 times and Dr. Mariorenzi's on 50 occasions. On 11 of those 50 visits he was examined by the doctor and on the others he received physical therapy.

No particular formula or rule of thumb is available either to a jury or to this court for computing the damages which is due a plaintiff for his pain and suffering. *Calci* v. *Brown, supra* at 223, 186 A.2d at 238; *Tilley* v. *Mather, supra* at 501-02, 124 A.2d at 874. But in applying the *Quince-Cartier* rule to the facts of this case, we are satisfied that this jury, after reimbursing the plaintiff for his out-of-pocket expenses, did not compensate him unreasonably for his pain and suffering.

The plaintiff's appeal is sustained, and judgment for the plaintiff is affirmed.

Mr. Chief Justice Roberts and Mr. Justice Paolino did not participate.

*Frank R. Mazzeo,* for plaintiff.

*Leonard A. Kiernan, Jr.,* for defendant.