**Richard P. KELAGHAN, Executor of the Estate of Ruth E. Coppage**

v.

**Perry G. ROBERTS et al.**

**No. 79–64–Appeal.**

Supreme Court of Rhode Island.

Aug. 5, 1981.

Saunders, Dumas & Krause, Harold E. Krause, Jr., East Greenwich, for plaintiff.

Anthony F. De Marco, Providence, for defendants.

## OPINION

MURRAY, Justice.

This is a civil action instituted in the Superior Court by the plaintiff, Ruth E.

Coppage (Coppage), to recover for personal injuries and property damage sustained in a motor-vehicle collision.[1] A Superior Court jury returned a verdict of $30,000 against the defendants, Perry G. Roberts (Roberts) and Demir Saydam (Saydam). Following that verdict, a Superior Court justice granted the plaintiff's motion for a new trial on the issue of damages unless the defendants consented to an additur of $60,000. This case is now before the court on an appeal by Saydam from the trial justice's conditional grant of the new trial.

The facts surrounding the motor-vehicle collision are not disputed by the parties and need only be briefly described. On March 27, 1975, a vehicle driven westward by Roberts on First Avenue in East Greenwich suddenly veered across the center line and struck the Coppage vehicle,[2] which was eastbound on the same highway. Roberts, the stepson of Saydam, who was the registered owner of the vehicle, was driving the vehicle on the date of the accident. After having been struck by Roberts's vehicle, the Coppage vehicle spun around and was hit by a third vehicle driven by John Schwarzkopf, who was also traveling eastward on First Avenue. As a result of the collision, Coppage sustained severe injuries including a fractured right knee, a fractured hip and pelvis, multiple rib fractures, and head injuries. These injuries required plaintiff to undergo two operations and to be hospitalized for an extended period.

On November 20, 1975, Coppage filed the instant complaint in the Superior Court against the three defendants,[3] alleging that the collision and her injuries were caused by their negligence.

1. Following the institution of this action, plaintiff Ruth E. Coppage died of a chronic renal condition unrelated to the injuries she had sustained in the collision. On October 3, 1977, an order was entered in the Superior Court substituting Richard P. Kelaghan, the executor of Ruth E. Coppage's estate, as party plaintiff in this matter.

2. According to an admission contained in a police report admitted into evidence at trial, Roberts stated that he had dropped a cigarette on the floor of the car and had bent down to pick it up.

At a pretrial conference in this matter, a Superior Court justice entered an order that, in part, provided:

"Plaintiff sues for personal injury and property damage on allegations that she was an owner of an automobile which she was operating on First Avenue in the Town of East Greenwich, on March 27, 1975 in mid-afternoon, when her motor vehicle was in collision with a motor vehicle operated by Perry Roberts and being driven driven upon the public highway with the consent of the owner Demir Saydam."

Prior to the commencement of the trial, Saydam moved to amend his answer to plaintiff's complaint with the additional defense that he did not own the vehicle at the time of the accident; after hearing arguments of counsel, the trial justice denied Saydam's motion.

On appeal from the trial justice's order conditionally granting Coppage a new trial, Saydam raises four issues. The additional facts involved in this matter will be discussed as needed in the resolution of those issues.

I

Initially, Saydam contends that the trial justice erred in granting plaintiff's motion for a new trial unless defendants consented to an additur of $60,000. He argues that the trial justice, in granting the motion, did not properly exercise his independent judgment, nor did he discuss which evidence he accepted and which he rejected. The duty of a trial justice in passing upon a motion for a new trial on the grounds of inadequa-

3. Prior to the trial in this matter, defendant Schwarzkopf agreed to a $20,000 settlement with the executor of plaintiff's estate and a stipulation was filed dismissing with prejudice plaintiff's action against him. At trial, the trial justice ruled that any verdict the jury returned for plaintiff would be reduced by that amount. As we indicated earlier, the jury returned a verdict of $30,000 in favor of plaintiff. That amount was reduced accordingly, and a judgment for $10,000 was entered against defendants.

cy of damages is essentially the same as his duty in considering a motion for a new trial generally. *Fontaine v. Devonis*, 114 R.I. 541, 551, 336 A.2d 847, 854 (1975).

█ In ruling on such a motion for a new trial, the trial justice must, in the exercise of his independent judgment, weigh all of the material evidence on the question of damages and pass on the credibility of the witnesses. *DiBattista v. Lincoln*, 109 R.I. 412, 413, 286 A.2d 591, 592 (1972); *Fitzgerald v. Rendene*, 98 R.I. 239, 240, 201 A.2d 137, 138 (1964). After this evidence-sifting process is completed and liability is established, the trial justice should grant a new trial on the question of damages if there is a demonstrable disparity between the jury's award and the damages sustained by plaintiff such that the verdict is not truly responsive to the merits of the controversy and fails to do substantial justice between the parties. *Roberts v. Kettelle*, 116 R.I. 283, 301, 356 A.2d 207, 218 (1976); *Grenier v. Royal Cab, Inc.*, 114 R.I. 11, 15, 327 A.2d 272, 274 (1974); *Hamrick v. Yellow Cab Co.*, 111 R.I. 515, 524, 304 A.2d 666, 672 (1973). If the trial justice finds that a new trial is warranted on the question of damages, it is his duty, before ordering a new trial thereon, to give the plaintiff an opportunity to file a remittitur or the defendant an additur. 1 Kent, *R.I. Civ. Prac.* § 59.4 at 440 (1969). We will not disturb a trial justice's finding that an award is grossly excessive or inadequate unless he is clearly wrong. *Roberts v. Kettelle*, 116 R.I. at 302, 356 A.2d at 218; *Hill v. A. L. A. Construction Co.*, 99 R.I. 228, 233, 206 A.2d 642, 645 (1965); *Armes v. United Electric Railways Co.*, 74 R.I. 450, 451, 62 A.2d 131, 131 (1948).

█ The trial justice, in deciding a motion for a new trial, need not exhaustively analyze the evidence or state all of his conclusions regarding its weight or the witnesses' credibility, but he or she should, at the very least, refer sufficiently to what prompts his or her action in order to enable this court to determine whether the trial justice's interference with the jury's verdict was based on a misconception of material evidence or was otherwise clearly wrong. *E. g., Wood v. Paolino*, 112 R.I. 753, 755–56, 315 A.2d 744, 745 (1974); *McVeigh v. McCullough*, 96 R.I. 412, 428, 192 A.2d 437, 446–47 (1963); *see Yammerino v. Cranston Tennis Club, Inc.*, R.I., 416 A.2d 698, 700 (1980). If a trial justice complies with these new trial obligations, his or her decision is entitled to great weight. However, if the trial justice does not perform his duties, his or her decision is deprived of the persuasive force to which it would otherwise be entitled. *Wood v. Paolino*, 112 R.I. at 757, 315 A.2d at 746.

The record in the instant case discloses that the trial justice, after hearing arguments of counsel, granted plaintiff's motion, stating:

"THE COURT. The Court felt that the verdict at that time was very inadequate and I will give the defendant five days within which to grant an additur of $50,000 for a total verdict of $70,000. This takes into consideration the total of $80,000, $10,000 being reduced having received payment from a third party. So that if the defendant will grant an additur of $50,000 within five days, the motion for new trial is denied; otherwise, the motion for a new trial on damages is granted.

"MR. TORRES. Just a point of clarification. The amount received was $20,000 from the third party.

"THE COURT. Eighty thousand total minus $10,000—

"MR. TORRES. It should be minus $20,000 I think, your Honor.

"THE COURT. The jury brought in a verdict of $30,000?

"MR. TORRES. Correct.

"THE COURT. I will add $50,000 to make it $80,000; from that deduct $10,000 and that will give a total of $70,000.

"MR. DeMARCO. The deduction should be $20,000, your Honor. That is the amount paid by the co-defendant to Mr. Torres' client.

"THE COURT. I see.

"MR. DeMARCO. Thirty minus $20,000, your Honor.

"THE COURT. Under the circumstances the Court will make it $90,000 minus $20,000. In other words, it is academic, isn't it?

"MR. DeMARCO. I believe it is academic, yes, your Honor.

"THE COURT. All right.

"MR. DeMARCO. Thank you, your Honor."

It is obvious that the trial justice failed to perform his duties in ruling on plaintiff's motion for a new trial. The trial justice's decision is devoid of any reference whatever to the evidence that he was accepting or rejecting, or to what testimony he believed and what he disbelieved. The trial justice's failure to indicate reasonably the basis for his conclusion that the jury's award of $30,000 was "very inadequate" thus deprives his decision of the persuasive force to which it would normally be entitled.

In such circumstances, we disregard the trial justice's decision and apply the appellate rule. *Wood v. Paolino*, 112 R.I. at 757, 315 A.2d at 746; accord, *Bruno v. Caianiello*, R.I., 404 A.2d 62, 64–65 (1979). In *Wood v. Paolino*, we stated that the appellate rule

"as it relates to the question of damages for pain and suffering, raises somewhat different problems from those encountered when the issues are liability or damages for out-of-pocket expenses. *Cartier v. Liberty Laundry, Inc.*, 49 R.I. 12, 139 A. 473 (1927). In the latter instances we look to the record to ascertain for ourselves whether there is any competent evidence which, if accepted as truthful, will sustain the verdict. *Bookbinder v. Rotondo*, 109 R.I. 346, 359–60, 285 A.2d 387, 394 (1972); *Gilbert v. Girard*, 109 R.I. 68, 74, 279 A.2d 919, 923 (1971). The adequacy of damages for pain and suffering, however, is determined by an exercise of our judgment and an application of our experience in the affairs of life and our own knowledge of social and economic matters. *Quince v. State*, 94 R.I. 200, 204–05, 179 A.2d 485, 487 (1962); *Cartier v. Liberty Laundry, Inc., supra* at 14, 139 A. at 474." 112 R.I. at 757–58, 315 A.2d at 746.

The jury here returned a verdict against defendants in the amount of $30,000. There was, as defendant points out, no indication in the jury's verdict of what amount the jury awarded plaintiff for out-of-pocket expenses and what amount the jury awarded her for pain and suffering. Our examination of the record reveals, however, that there is competent evidence therein to support an award of approximately $26,788 for plaintiff's medical expenses.[4] If we consider this figure as the amount in fact awarded by the jury for plaintiff's out-of-pocket expenses, it would follow therefore that the jury awarded plaintiff approximately $3,200 for pain and suffering. The question for us thus becomes whether, applying our experience in the affairs of life and our own knowledge of social and economic matters, the trial justice's granting of an additur of $60,000 to plaintiff was excessive as compensation for her pain and suffering. We think not.

In this respect, the record indicates that as a result of the collisions with defendants, plaintiff sustained severe injuries including a fractured right knee, a fractured hip and pelvis, multiple rib fractures, and head injuries. She was hospitalized at Rhode Island Hospital from the date of the accident until July 1, 1975, a period of over three months. Doctor Rosario V. Tomaselli, an orthopedic specialist, testified that repair of plaintiff's knee fracture required removal of half her kneecap. He also repaired plaintiff's right hip joint by inserting a metal screw and pin into the hip. As part of her recuperation, plaintiff was required to remain in traction for almost two months. Later, Dr. Tomaselli performed a second operation to remove the metal screw from plaintiff's hip.

4. At trial, plaintiff introduced statements of charges for medical expenses totaling $26,788.70. This amount included bills from Rhode Island Hospital ($19,789.80), Dr. Rosario V. Tomaselli ($2,570), Kent County Memorial Hospital ($137), Kent Nursing Home, Inc. ($4,037.90), and the Kent County Visiting Nurse Association ($254).

The doctor also testified that during the time plaintiff was in traction, the metal pin in her hip was protruding through her skin and would have been "quite painful." During the times he visited her in the hospital and later in a nursing home, the doctor testified plaintiff complained about pain in her hip and in her knee. Following her release from the hospital, plaintiff was not able to walk without the assistance of a cane or a walker. Finally, the doctor testified that as a result of the injuries sustained in the collision, plaintiff developed arthritis in her hip which limited her motion and prevented her from standing for more than twenty minutes at a time without pain.

At trial, Sharon Horan, a friend of plaintiff, testified that prior to the accident plaintiff was a self-sufficient, happy person who would go shopping, bicycling, and walking on her own. According to Ms. Horan, after plaintiff's release from the hospital, plaintiff could no longer care for herself. She testified that plaintiff first needed nursing-home care and then, following plaintiff's return to her own home, needed a homemaker to assist her with her household chores. Ms. Horan stated that plaintiff was quieter and not so happy after the collision as before, that plaintiff had lost weight, and that she complained about pain in her hip and in her knee until the time she died.

Applying the appellate rule to the facts in the instant case, we must conclude, given the evidence found in the record concerning the nature and extent of plaintiff's injuries and the resultant pain and suffering, that the trial justice's granting of the $60,000 additur to plaintiff's award was not excessive but instead adequately compensated plaintiff for her pain and suffering during the remaining two years of her life following the accident. We therefore affirm the trial justice's granting of an additur to plaintiff's award in that amount.

## II

The second issue raised by Saydam in this appeal is that the trial justice committed reversible error in refusing to allow him to introduce evidence at trial to show that the car involved in the accident, although registered in his name at the time of the accident, had been deleted from his insurance policy. He contends that evidence of the deletion of the vehicle from the policy was relevant to the question of ownership of the vehicle at the time of the accident. Saydam contends that although the trial justice permitted him to introduce evidence at trial that he did not own the vehicle driven by Roberts on the day of the collision, the trial justice erred when he limited that evidence to exclude any reference to insurance.

In his offer of proof to the trial justice, defendant stated:

The defendant is prepared to prove that Mr. Saydam purchased this car probably sometime in 1974; and he eventually bought another car to replace this vehicle; then he had the Chevrolet, which is the car involved in this accident, deleted from his insurance policy; that the Chevrolet was kept at Bell's Transmission on Post Road and wasn't being used by the defendant; that sometime in early 1975 his stepson, Mr. Perry Roberts who is a defendant in this case, said that he intended to buy a car; at that time Mr. Saydam offered the Chevrolet, which had not been used and was not being used to his stepson for a minimal amount of money, $200 or $300; the accident happened shortly after this sale took place and Mr. Perry Roberts told Mr. Saydam after the accident that he had not registered the car in his own name because the Registry of Motor Vehicles told him that he could save himself the money of two registrations in March rather than the one-shot deal; that although Mr. Saydam was the registered owner of the car on the date of the accident, he did not own the car on March 27, 1975 [the date of the accident]."

 It is well settled in this jurisdiction that the admission of evidence objected to as being irrelevant or immaterial is within the sound discretion of the trial justice. *Atlantic Paint & Coatings, Inc. v. Conti,*

R.I., 381 A.2d 1034, 1036 (1977); *Engelhardt v. Bergeron*, 113 R.I. 50, 57–58, 317 A.2d 877, 882 (1974). The exclusion of such evidence will not constitute a basis for reversal unless the trial justice abused his discretion, *Aiello Const., Inc. v. Nationwide Tractor, etc.*, R.I., 413 A.2d 85, 89 (1980), thereby causing substantial injury to the party seeking the admission of such evidence. *Gaglione v. Cardi*, R.I., 388 A.2d 361, 363 (1978). We will find substantial injury only if a party convinces us that the evidence excluded was relevant and material to a crucial issue and that the evidence, if admitted, would have had a probable influence on the jury's verdict or a controlling influence on a material aspect of the case. *Benoit v. Bradley*, R.I., 402 A.2d 581, 583 (1979); *Gaglione v. Cardi*, 388 A.2d at 363; *Powers v. Carvalho*, 117 R.I. 519, 533, 368 A.2d 1242, 1250 (1977). The burden of demonstrating that the excluded evidence was material and that its exclusion had a prejudicial influence on the decision rests upon the party seeking the admission of the evidence. *Aiello Const., Inc. v. Nationwide Tractor, Etc.*, 413 A.2d at 89; *Gaglione v. Cardi*, 388 A.2d at 363–64; *Atlantic Paint & Coatings, Inc. v. Conti*, 381 A.2d at 1036; *Mercurio v. Fascitelli*, 116 R.I. 237, 244, 354 A.2d 736, 740 (1976).

■ We find no abuse of the trial justice's discretion in refusing to admit such evidence. In our view, evidence that Saydam deleted the vehicle from his insurance policy was of little, if any, relevance to the question of whether or not he owned the vehicle on the date of the collision. Even if we were to consider the evidence of the insurance coverage relevant and material to the crucial issue of ownership of the vehicle, defendant has failed to convince us that this evidence, if admitted, would have had a probable or controlling influence on the jury's determination on that issue. Moreover, it appears from the record that the trial justice did allow Saydam to testify that he did not own the vehicle on the date of the accident, because, he claimed, he had sold the car to Roberts several days prior to the accident. That evidence, had it been believed, would have been the most persuasive proof that Saydam did not own the vehicle on the date in question.

## III

The defendant's next argument is that the trial justice erred in allowing plaintiff to read her complaint, defendant's answer, as well as a pretrial order entered in the case, to the jury during closing arguments in order to show that Saydam had previously admitted that he did own the vehicle on the date of the accident. The defendant argues that in so doing, the trial justice permitted plaintiff's counsel to present an argument to the jury concerning documents that were not in evidence.

■ The record certified to us from the Superior Court, however, contains neither a transcript nor a summary of the closing arguments of counsel. It is fundamental that a party seeking to have this court review errors allegedly committed at trial has the burden of furnishing us with so much of the record as may be required to enable this court to pass upon the error alleged. *Chariho Regional High School District v. Town Treasurer of Hopkinton*, 109 R.I. 30, 45, 280 A.2d 312, 320 (1971). Here, in the absence of a transcript of counsel's closing argument to the jury, we do not know the precise nature of plaintiff's argument or, indeed, if in fact plaintiff did refer to the pleadings and pretrial order in his argument; therefore, we cannot pass upon the error asserted. *See Morgan v. DiBiase*, R.I., 403 A.2d 1080, 1084 (1979).

## IV

■ As his final reason for appeal, Saydam argues that the trial justice erred in his charge to the jury. Specifically, defendant faults that portion of the trial justice's charge in which he instructed the jury that

"[i]f you find that plaintiff's injuries were caused or contributed to by negligence on the part of defendant Perry G. Roberts and not plaintiff herself, then you must return a verdict against defendants Roberts and Saydam in the full amount of the plaintiff's damages even

though you might believe that John Schwarzkopf may have also contributed to plaintiff's injuries."

The defendant contends that the trial justice's charge, in effect, expressed a conclusion based on the issue of ownership of the vehicle, an issue that was within the province of the jury to decide.

Before reaching the merits of defendant's contention, we must address ourselves to the threshold question of whether or not defendant has properly preserved this issue for our review. Recently, in *A. R. Alvernas, Inc. v. Cohen*, R.I., 420 A.2d 78 (1980), we noted that

> "Rule 51(b) of the Superior Court Rules of Civil Procedure [5] requires that counsel lodge their objections to the trial justice's charge and inform the trial justice of the grounds for the objections before the jury retires to begin its deliberations of the case. *Seabra v. Puritan Life Insurance Co.*, 117 R.I. 488, 503, 369 A.2d 652, 661 (1977). The purpose of the rule is to afford the trial justice an opportunity to make any necessary corrections in his instructions. *Johnson v. Palange*, R.I., 406 A.2d 360, 366 (1979); *Allen v. D'Ercole Construction Co.*, 104 R.I. 362, 371–72, 244 A.2d 864, 870 (1968). The objection raised by counsel must be specific enough to focus the trial justice's attention on the precise nature of the alleged error. *Johnson v. Palange*, 406 A.2d at 366; *Hoffman v. Sachs*, R.I., 403 A.2d 668 (1979); *Majewski v. Porter*, R.I., 403 A.2d 248, 252 (1979). Though no particular formality is required of counsel in raising an objection, the objector must express himself or herself in such a way as to alert the trial justice to the possible errors in his charge. *Smith Development Corp. v. Bilow Enterprises, Inc.*, 112 R.I. 203, 211, 308 A.2d 477, 482 (1973)." *Id.* 420 A.2d at 81.

The record before us indicates that following the trial justice's instructions to the jury, defendant objected to the instructions as given. With respect to that portion of the charge now in question, defendant stated, "I object to the charge with respect to plaintiff's request number 3 to charge, which I think your Honor gave almost totally * * *." [6]

Although in the case at bar the defendant's objection to the charge given referred to the precise portion of the charge the defendant found objectionable, he failed to comply with the further requirements of Super.R.Civ.P. 51(b) which oblige counsel to state the grounds of his objection distinctly so as to focus the trial justice's attention on the precise nature of the alleged error in his charge. This failure on the part of the defendant to preserve this issue properly at trial precludes us from now reviewing the merits of his contention.

For the reasons discussed, the defendant's appeal is denied and dismissed, the order appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings.

---

**5.** Rule 51(b) of the Superior Court Rules of Civil Procedure provides in pertinent part:

> "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

**6.** That portion of the trial justice's charge quoted above was, in fact, a substantially verbatim recitation of plaintiff's request for instruction no. 3.