339 A.2d 272.

LILLIAN LEBON *et al. vs.* B. L. & M. BOTTLING COMPANY, INC. *et al.*

JUNE 13, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

Joslin, J. This civil action was brought by a wife and her husband to recover damages for injuries allegedly sustained when an automobile operated by the husband, in which his wife was a passenger, stopped at a traffic light and was struck in the rear by a truck owned by the corporate defendant and driven by the individual defendant. The case was tried in the Superior Court in May 1973, and the jury returned verdicts of $12,000 for the wife and $2,000 for the husband. A new trial was then granted on the issue of damages only, unless the wife remitted all of her award in excess of $6,000, and the husband all of his in excess of $1,239. The plaintiffs appealed.

The question before us is whether the trial justice erred in finding that the jury's verdicts were not fully supported by the evidence and were based largely on sympathy for plaintiffs. That issue can be resolved readily by viewing those findings in light of this record and the principles recently reviewed in *Wood* v. *Paolino,* 112 R. I. 753, 315 A.2d 744 (1974).

### The Wife's Case

The collision occurred on December 22, 1969. Thereafter and continuing until trial, the wife, who had a his-

tory of back difficulties, complained of pains in the head, neck, shoulders, lower back, and left-side sciatic region. On the advice of her doctors she received numerous physiotherapeutic treatments to her back and neck, wore a cervical collar, underwent cervical trachintherapy sessions, and frequently took muscle relaxants and pain medication. In addition, she was hospitalized for a myelogram performed in an attempt to pinpoint the source of her difficulties.

The wife's principal attending physician was Dr. Augustine Eddy, an orthopedic surgeon. He thought that as a direct result of the accident she sustained a cervical sprain superimposed on an arthritic spine, and his opinion was that her immediate injuries would have improved more quickly had she not had that pre-existing condition. Following Dr. Eddy's recommendation that she be seen by a neurosurgeon, she consulted Dr. Federico L. Catucci in March 1970. He diagnosed her condition as "residuals of neck strain with cervical radiculitis" and advised continued physiotherapy and the use of a cervical traction kit for 15 to 20 minutes at a time, three to four times a day. While his prognosis was generally favorable, he indicated that the time of recovery could not reliably be anticipated.

The wife was still using the traction unit prescribed by Dr. Catucci when she consulted Dr. Melvin Gelch, another neurosurgeon, in November 1970. After examination, his diagnosis was "post-concussion syndrome to tentative herniation of disc on L-4 and 5 on lumbar spine." He recommended that she use hydrocollator boards in order to control spasms and keep the disc in place. After further examinations in December 1970 and February 1971, during which he observed that she could barely lift her legs from the table, Dr. Gelch determined that "she was a candidate for surgery, that she had a herniated disc."

He then hospitalized her on February 2, 1971, and a lumbar myelogram and lumbar puncture were performed. Although the myelogram was normal, the "refluoroscopy with dye" was in his opinion suspicious.

Following a further examination in March 1971, Dr. Gelch concluded that a lumbar laminectomy and exploration would be in order if she did not improve by the summer. She elected, however, not to undergo surgery and was not seen professionally again by Dr. Gelch. At trial he testified that there was a reasonable medical certainty that she suffered from "cervical strain, cervical muscle strain and active osteoarthritis" and "herniated lumbar disc suspect," and that these conditions were the result of the automobile accident.

Based upon this record, the trial justice concluded that a causal connection between the accident and the disc injury existed "in the realm of possibility only," that the cervical strain alone was directly attributable to the accident, and that the jury's assessment of damages therefore must have been "based on sympathy only and not on the state of the evidence." Accordingly, he granted a new trial on the issue of damages, unless the wife remitted all of the verdict in excess of $6,000.

The trial justice's conclusion, however, is inconsistent with Dr. Gelch's testimony that there was "reasonable medical certainty that the automobile accident that Mrs. Lebon was involved in, directly resulted in the complaints of left sided sciatica for which she had tentative diagnosis of lumbar disc suspect." In that testimony the doctor clearly indicated his opinion that this diagnosis existed as a "reasonable medical certainty," rather than within "the realm of possibility." While his use of the adjectives "tentative" and "suspect" may appear to have been limiting, those words, as we understand them, customarily are used only to make clear that a diagnosis of this kind can-

not be completely unqualified until confirmed during surgery. That being so, we conclude that the trial justice must have overlooked or misconceived that testimony, which in our opinion provided an adequate evidentiary basis for a jury-finding that the wife suffered from a herniated lumbar disc as a direct consequence of the accident.

That the wife may also have had a pre-existing condition which interfered with her recovery is of no legal effect, for it is well settled that a defendant in a personal injury accident takes his victim as he finds him and cannot defend on the ground that his actions only aggravated an earlier condition or that the plaintiff was weak, decrepit, or among those unusually susceptible to the injury sustained. *See* Prosser, *Torts* §43 at 261-62 (4th ed. 1971); Annot., 2 A.L.R.3d 290 *et seq.* (1965).

We come now to the question of whether, on the record and under *Wood* v. *Paolino, supra,* the trial justice erred in ordering the wife's remittitur. Because the trial justice overlooked or misconceived the significance of Dr. Gelch's testimony, his decision lacks the persuasive force it otherwise would convey. We therefore must apply the appellate rule, which requires us to exercise our judgment and apply our experience in the affairs of life and our own knowledge of social and economic matters. Viewed in that light the award of $12,000 neither shocks our conscience nor indicates that the jury was influenced by passion or prejudice or that its verdict was for any other reason clearly erroneous. Accordingly, we conclude that the wife's award does not unreasonably exceed an amount adequate to compensate for her pain and suffering.

### The Husband's Case

The parties apparently agree that the husband is entitled to damages of $999 for fees paid to physicians. They agree also that the daily cost of the wife's 10-day stay in the hos-

pital was $80 and that a normal stay for the myelogram procedure for which she was admitted is 3 days. They disagree, however, over whether her additional 7 days of hospitalization were causally connected to the accident and therefore compensable as consequential damages.

In the trial justice's opinion, the wife's hospital stay was extended only because of a cardiac insufficiency disclosed by an electrocardiogram reading taken shortly after her admission, a condition unrelated to the accident and for which defendants therefore are not responsible. But the record shows that an additional factor contributing to 2 or 3 days of the wife's extended hospitalization was difficulty encountered in removing dye from the wife's spine. The extent to which her stay was prolonged for this reason, one clearly causally related to the accident, was apparently overlooked by the trial justice. The *Wood* decision therefore compels us again to apply the appellate rule and accordingly ascertain whether the record contains any evidence which, if accepted as truthful, would sustain a verdict including $999 in physicians' fees and $480 in hospital charges for a total of 6 days. Because we find that it does, the remittitur ordered should have been $521 rather than $761.

### Conclusion

The plaintiff-wife's appeal is sustained and the judgment in her favor is affirmed; the plaintiff-husband's appeal is sustained in part and overruled in part, the judgment in his favor is affirmed in part and overruled in part, and in his case the defendants are entitled to a new trial on the issue of damages only, unless he files a remittitur of all of the verdict in his favor in excess of $1,479.

*Lovett & Linder, Ltd., Stephen G. Linder,* for plaintiffs.

*Gunning, LaFazia, Gnys & Selya, Raymond A. LaFazia,* for defendants.