Louise A. MOUCHON

v.

ERIKSON'S, INC.

No. 79–355–Appeal.

Supreme Court of Rhode Island.

July 28, 1982.

James J. McGair, Providence, for plaintiff.

Gunning, LaFazia & Gnys, Inc., Netti C. Vogel, Providence, for defendant.

OPINION

BEVILACQUA, Chief Justice.

This is a civil action instituted by the plaintiff, Louise A. Mouchon, to recover for personal injuries sustained when a defective relay in her stove caused the oven to overheat in the self-cleaning cycle and then emit smoke. The defendant, Erikson's Inc., is a corporation engaged in the business of selling and servicing appliances. The case was tried before a jury in the Superior Court. After the jury returned a verdict

for the plaintiff in the amount of $20,000, the trial justice granted the defendant's motion for a new trial. The plaintiff appeals.

The following evidence was adduced at trial. The plaintiff owned an electric range that she had purchased from defendant. In July of 1973, plaintiff complained to defendant that the stove was not operating properly. Thomas Castaldi, defendant's service manager, examined the unit. Inside the front panel of the oven he found a dead mouse that had chewed through wires and shorted the relay and the oven safety lock. That lock secures the oven door during the self-cleaning cycle. He replaced the relay and returned on October 6, 1973, to replace the safety lock. Upon replacing the lock, he informed plaintiff that she could operate the oven in the self-cleaning cycle but suggested that while doing so she turn on a fan or open a window because heavy soil within the oven and drip bowls could cause smoke.

The plaintiff testified that after the repairs had been completed, she activated the self-cleaning cycle. She then lay down on a couch and "dozed off." She was awakened by her dog and found that her house was "very dark, smokey." She went outside through the patio door, sat on the step, reached through the open door to her telephone, and called the fire department.

Battalion Chief Frank Parente of the West Warwick fire department testified that when he arrived at the scene smoke was visible but there was no sign of a fire. He also testified that plaintiff refused medical attention and refused to allow him to pull the fuse on the stove or to call for special "smoke ejectors." Chief Parente turned on the exhaust fan in plaintiff's kitchen and got rid of the smoke.

While the chief was at plaintiff's house, Mr. Castaldi returned. He examined the oven, which by that time had automatically turned off. Mr. Castaldi attributed this to the fact that the oven had completed the cool-down process.

The plaintiff called two experts, Mr. Philip Parmentier and Professor Marc Richman, who testified that they had examined the relay defendant had installed and that a defect existed in that relay. Both of these experts also testified that the defect they found could cause the oven to overheat in the self-cleaning cycle.

The plaintiff testified that as a result of this incident she became ill. She claimed that awakening to find smoke in her house caused her severe concern and anxiety. She also indicated that this anxiety interfered with her work as a beautician and forced her to cancel several appointments.

The plaintiff submitted medical reports and bills in the sum of $199 for treatment incurred as a result of this accident. Because of a heart condition for which plaintiff had been hospitalized in 1970 and 1973, she had sought and received emergency treatment at Kent County Memorial Hospital on the evening of the incident. After testing plaintiff to determine the effect of the incident on her heart condition, the hospital released her that night. The plaintiff later consulted with Dr. John C. Osenkowski, the physician who had been treating her heart problems, regarding her nervousness and tension. Doctor Osenkowski repeatedly recommended to plaintiff that she consult a psychiatrist, but she refused to do so. The plaintiff was hospitalized between February 24 and March 1, 1974, for conditions not related to the accident. By September 1974, her nervousness had lessened to the point that she could handle it, and she received no further medical treatment for problems arising as a result of this incident.

The trial justice submitted the case to the jury on two counts: one for breach of implied warranty and one for strict product liability. On plaintiff's claim for breach of implied warranty, the jury found for plaintiff in the amount of $20,000. On her claim for strict product liability, the jury found for plaintiff in the amount of $15,000. Because of the inconsistency in the verdict the trial justice instructed the jury to resume deliberations. Upon doing so, they returned a verdict for plaintiff on both counts in the amount of $20,000.

The defendant filed a motion for a new trial. The trial justice granted the motion, stating that the jury's award of damages was grossly excessive and that the verdict indicated that the jury was swayed by sympathy, passion, and prejudice.

The plaintiff argues that the trial justice's decision is erroneous for two reasons. First, plaintiff alleges that in stating that "[t]he claim for lost wages had nothing to do with this incident whatsoever, the trial justice overlooked evidence of her lost income, which he had allowed to go to the jury. Second, plaintiff insists that the trial justice could not set aside the jury's finding on the issue of liability because he conceded that "the jury could have gone either way" on the proximate-cause question.

■ It is well settled that the trial justice's duty in considering a motion for a new trial is to exercise his independent judgment and to review all of the material evidence in the case in light of his charge to the jury, passing on the weight of the evidence and the credibility of the witnesses. *Barbato v. Epstein*, 97 R.I. 191, 196 A.2d 836 (1964). If he concludes that the evidence is so evenly balanced that reasonable minds could draw differing conclusions therefrom, he must approve the verdict regardless of his own doubts about its correctness. If, however, he concludes that the verdict is not a proper response to the evidence, he should order a new trial. *Id.* at 194, 196 A.2d at 837. In discharging his duty, the trial justice need not engage in an exhaustive analysis into the import of all the evidence. He should, however, refer sufficiently to the evidence to indicate what motivates him to rule as he does. *Yammerino v. Cranston Tennis Club, Inc.*, R.I., 416 A.2d 698 (1980); *Morinville v. Morinville*, 116 R.I. 507, 359 A.2d 48 (1976).

■ On appeal, a trial justice's ruling on a motion for a new trial will not be disturbed unless he misconceived or overlooked material evidence or was otherwise clearly wrong. *Taft v. Cerwonka*, R.I., 433 A.2d 215 (1981); *Fox v. Allstate Insurance Co.*, R.I., 425 A.2d 903 (1981); *Yammerino v. Cranston Tennis Club, Inc., supra.* Thus,

the sole issue before this court is whether, under that standard of review, the trial justice erred in granting defendant's motion.

After reviewing the facts of the instant case, the trial justice stated,

"I conclude that this verdict was grossly excessive. In fact it was so grossly excessive that I conclude that the jury was motivated by sympathy, passion and prejudice in favor of the plaintiff in this case and that infects the whole verdict * * *. [Plaintiff's] claim for lost wages had nothing to do with this incident whatsoever. Her hospitalizations and her complaints of pain in the upper body, cervical area, had nothing to do with this incident whatsoever. The only thing that resulted from this incident is that she inhaled a little bit of smoke * * *. [S]he refused to go to the accident room immediately * * * and when she went she didn't really go for smoke inhalation * * *. She went to have her heart checked out * *. She was found to be all right. She went to her doctor * * * and he found that she was all right. He found that she had some anxiety reaction to this incident but the evidence in this case indicates that her anxiety reaction was minimal. * * * This woman's testimony in many respects was incredible. * * * [T]here is no evidence in this case that ties in any of her mental problems with this incident other than her anxiety reaction a short time after the event which undoubtedly dissipated when she got a new stove. * * * There is no testimony from any psychiatrist in this case which ties her mental problems to this incident. * * * In short, assuming liability by the defendant and viewing the evidence of damages in the light most favorable to the plaintiff as justified by the evidence, the jury would not have been warranted in bringing back a verdict in excess of five hundred dollars in this case."

■ Although plaintiff maintains that the trial justice, having allowed evidence of her lost wages to go to the jury, erred in finding that her claim for lost wages had

nothing to do with the case, this court has previously recognized that a trial justice may properly set aside a jury's determination on a question of fact even though evidence sufficient to go to the jury had been presented. "[Q]uestions of fact to be decided by the jury in the first instance * * [are] properly considered in reviewing the evidence on * * * [a] motion for a new trial." *Galusha v. Carlson*, 120 R.I. 204, 208, 386 A.2d 634, 636 (1978). When, as in the instant case, the trial justice states on the record his reasons for rejecting evidence, he does not, merely by granting a motion for a new trial, improperly substitute his judgment for that of the jury. "[I]t is well settled that every time a new trial is granted on the ground that the verdict is contrary to the evidence, there is indeed a substitution of the trial justice's conclusion for the finding of the jury." *Id.*

It is also well settled that the fixing of damages, although a jury function, may be interfered with by a trial justice if, after exercising his independent judgment in passing upon the evidence of damages, he finds that the award is grossly in excess of an amount adequate to compensate the plaintiff for the injuries sustained. *Yammerino v. Cranston Tennis Club, Inc., supra.* When the damages awarded are for pain and suffering, the trial justice may disregard the jury's award on a motion for a new trial if the award "clearly demonstrates that the jury was influenced by passion or prejudice, or that it proceeded upon a clearly erroneous basis in arriving at its award." *Id.* 416 A.2d at 700.

This court has recognized that when an award of damages is sufficiently excessive to indicate that the jury was motivated by sympathy, passion, and prejudice, a new trial on the issue of liability is required. In *Lornitzo v. Rhode Island Hospital*, 79 R.I. 455, 460, 89 A.2d 831, 833 (1952), we stated, "When prejudice or other improper influences of this kind are found by the trial justice to have operated to the extent above mentioned, it is difficult to determine with reasonable certainty where they end." In such an instance a new trial is necessary to ensure that a jury fairly decides all the issues of the case on the evidence and the law alone.

Accordingly, the plaintiff's appeal is denied and dismissed, and the case is remanded to the Superior Court for a new trial.