Mavis E. MANGASARIAN, Individually
and in her Capacity as Executrix of the
Estate of John G. Mangasarian

v.

Edward L. GOULD, et al.

No. 85–402–A.

Supreme Court of Rhode Island.

Feb. 11, 1988.

John F. Cuzzone, Jr., Samuel Miller, Quinn, Cuzzone & Geremia, Providence, for plaintiff.

David P. Whitman, Hanson, Curran & Parks, Providence, for defendants.

## OPINION

WEISBERGER, Justice.

This case comes before us on the defendants' appeal from a judgment entered in the Superior Court following a jury trial. We affirm. The facts insofar as pertinent to this appeal are as follows.

On February 24, 1979, John Mangasarian (Mangasarian), husband of plaintiff, Mavis Mangasarian, was a passenger in an automobile operated by his son-in-law, Raymond Klein. As the Klein vehicle proceeded along Route 2 in North Kingstown, it was struck by another vehicle operated by defendant Edward L. Gould and owned by defendant Ophthalmology Care, Inc. As a result of that collision, John Mangasarian sustained serious injuries, including multiple rib fractures. He died on February 10, 1980, from complications due to lung cancer.

On May 27, 1981, plaintiff, individually and in her capacity as executrix of the estate of her husband, filed a complaint in the Superior Court against defendants, alleging that her husband died as a result of the injuries sustained on February 24, 1979. The case was reached for trial on February 25, 1985. Thereafter defendants admitted liability, and trial proceeded solely on the issue of damages. At the conclu-

sion of trial, the jury returned a verdict in favor of plaintiff in the amount of $110,-000.

At trial, Dr. Rocco Marzilli was offered as an expert witness for plaintiff. Doctor Marzilli testified that he had first seen John Mangasarian as a patient on May 31, 1979, as a result of severe headaches that Mangasarian had been experiencing. According to Dr. Marzilli, Mangasarian's history revealed that he had been involved in an automobile accident on February 24, 1979:

"Q. And did you take a history on that date, Doctor?

"A. Yes, I did.

"Q. What was the history that you took?

"A. On February 24, 1979, while going around a bend in the road—this is what he stated—a car travelling fast came around and hit his car in the left front part of his car. The patient stated he broke the windshield with his head and fractured three ribs on the left and his neck was sore. He said that right afterwards he started to get lightheaded, especially when moving around. He had almost daily headaches and he was taking Tylenol with Codeine III. He also told me he was a known diabetic on insulin, did not particularly follow his diet, and told me he had a history of duodenal ulcer, and had a G.I. series done the year prior. He told me he had upper abdominal pain two weeks ago, and that usually bothered him in the fall and spring, which ulcer disease usually does. That was the main history at the time.

"Q. Did you conduct a physical examination?

"A. Yes, I did."

Because of the persistence of Mangasarian's severe headaches, Dr. Marzilli admitted him to St. Joseph Hospital on July 12, 1979. At that time chest X rays were taken that revealed on the left lung field a lesion, subsequently found to be malignant. Thereafter, Dr. Marzilli ordered a consultation with Dr. Jorge Benavides, a cardiothoracic surgeon. Ultimately Mangasarian underwent a left radical pneumonectomy, or complete removal of the left lung.

Several months later, during a routine office visit, Dr. Marzilli discovered a mass in Mangasarian's abdomen. On December 17, 1979, Mangasarian was admitted to Rhode Island Hospital, at which time subsequent tests revealed the existence of a malignant tumor in Mangasarian's abdominal region. Doctor Marzilli, together with several cancer specialists, continued to treat and monitor Mangasarian's condition until his death on February 10, 1980.

Following Dr. Marzilli's recitation of Mangasarian's history, defense counsel strenuously objected to any further line of questioning by plaintiff's counsel intended to elicit from Dr. Marzilli an opinion regarding the causation of Mangasarian's lung cancer. The trial justice overruled defense counsel's objection and allowed Dr. Marzilli to testify as an expert, noting: "[h]e's an expert because he has more expertise in the field of medicine than we do as lay people. I realize he is not a cancer specialist, but he is a physician. The only requisite for experts is if they have more expertise than we do as lay people, and he obviously does. What he says are factual questions for the jury to weigh."

Following that ruling by the trial justice, plaintiff's counsel, over strenuous objection by defense counsel, questioned Dr. Marzilli regarding the causation of Mangasarian's lung cancer:

"Q. * * * based upon your experience, training and expertise as a physician, with the specialties you've described, do you have an opinion, based upon reasonable medical certainty, as to whether or not there is a causal relationship between the Plaintiff's automobile accident on February 24, 1979, and his death on February 10 of 1980?

*　　*　　*　　*　　*　　*

"A. Yes, I do.

"Q. What is that opinion?

*　　*　　*　　*　　*　　*

"A. I think the probability exists.

"Q. As to what, now?

*　　*　　*　　*　　*　　*

"A. As to the accident might have contributed.

\* \* \* \* \* \*

"Q. When you say the probability might exist, can you testify with a reasonable degree of medical certainty as to whether, more probably than not, there is a causal connection between the automobile accident and his death on February 10, 1980 \* \* \* ?

\* \* \* \* \* \*

"A. Yes.

"Q. Now, what is the reason, Doctor, for the opinion you have just expressed?

\* \* \* \* \* \*

"A. I've reviewed the literature on it. From my own experience and my own feeling, a trauma has been known and discussed to be one of the possible causes of cancer since the late 1800's and my references go back to the late 1800's to an article as late as last year, 1984 \* \* \*?"

Defense counsel moved to strike Dr. Marzilli's entire response on grounds that he was unable to state that the "resulting [cancerous condition] most probably came from the cause alleged."

In support of their appeal, defendants raise several issues that will be addressed in the order in which they are presented in defendants' brief. Further facts will be supplied as necessary to a determination of the issues.

## I

WHETHER THE TRIAL JUSTICE ERRED IN ALLOWING PLAINTIFF'S WITNESS DR. ROCCO MARZILLI, TO GIVE EXPERT TESTIMONY ABOUT CAUSATION OF LUNG CANCER

The defendants first assign as error the ruling by the trial justice that plaintiff's witness, Dr. Rocco Marzilli, was qualified to express an expert opinion about the cause of Mangasarian's lung cancer. The defendants' allege that Dr. Marzilli lacked sufficient expertise in the field of oncology to offer an expert opinion regarding causation or treatment of cancer of the lungs.

This court has long held that the question of whether a witness is qualified to express an expert opinion is a matter that is committed to the sound discretion of the trial justice, and the exercise of such discretion will not be disturbed on appeal absent a showing of abuse. *Richardson v. Fuchs,* 523 A.2d 445 (R.I. 1987); *Greco v. Mancini,* 476 A.2d 522 (R.I. 1984); *Gormley v. Vartian,* 121 R.I. 770, 403 A.2d 256 (1979); *Leahey v. State,* 121 R.I. 200, 397 A.2d 509 (1979); *Schenck v. Roger Williams General Hospital,* 119 R.I. 510, 382 A.2d 514 (1977).

During defendants' voir dire, Dr. Marzilli testified that he was not an expert in regard to oncology or treatment of diseases of the lungs. Rather, Dr. Marzilli defined himself as a "primary care physician," with a specialization in gastroenterology and internal medicine. Specifically, Dr. Marzilli described a primary-care physician as one who "take[s] care of many things, from the head to the feet," and who is involved in "making diagnoses" and treating and occasionally referring patients. Regarding the specialty of gastroenterology, Dr. Marzilli testified that he "[took] care of things like liver disease, ulcers, colitis, diseases of the gastrointestinal tract." Doctor Marzilli further acknowledged that he had occasion to deal with cancer and, in fact, in his practice he saw "a lot of cancer in the G.I. tract, cancer of the stomach, esophagus, colon" and "much less frequently because its not as frequent, cancer of the pancreas."

Doctor Marzilli is a graduate of Providence College, and attended the University of Bologna in Italy. He fulfilled his internship at St. Joseph Hospital and completed his residency in internal medicine at the Veterans Administration Hospital and Rhode Island Hospital. He then completed two years training in gastroenterology at both Rhode Island Hospital and the Veterans Administration Hospital. Doctor Marzilli further testified that, as of the time of trial, he was affiliated with Rhode Island Hospital and St. Joseph Hospital as an associate physician and was also serving as a clinical instructor in gastroenterology and

medicine at the Brown University Medical School. As of the time of trial, Dr. Marzilli had been practicing medicine for approximately eighteen years.

In addition to his educational background and practical experience, Dr. Marzilli testified that he belonged to a number of medical associations and societies, served on the board of directors of the Colitis and Ileitis Association, and was a scientific advisor to the Rhode Island Chapter of the National Association of Ileitis and Colitis. Most significantly, however, was the fact that Dr. Marzilli was the primary treating physician of John Mangasarian from May 31, 1979, until his death, following Mangasarian's course of treatment throughout his hospitalization.

This court has previously held that a trial justice does not abuse his or her discretion merely because he or she permits a witness to testify whose qualifications have not been shown to be extraordinary or superlative. *Rossilli v. Iacovelli*, 88 R.I. 456, 149 A.2d 709 (1959). Further, the rule long established in this jurisdiction is that:

"where the subject matter of the [expert] testimony is of a mechanical, scientific, professional or like nature, none of which is within the understanding of laymen of ordinary intelligence, and where the witness seeking to testify possesses special knowledge, skill or information about the subject matter acquired by study, observation, practice or experience, then such an individual's opinion may be heard as an aid to the jury in its quest to discover the truth." *Morgan v. Washington Trust Co.*, 105 R.I. 13, 17-18, 249 A.2d 48, 51 (1969).

The trial justice appropriately noted that although Dr. Marzilli was a specialist in gastroenterology and internal medicine and not in oncology or in diseases of the lungs, that fact might have affected the weight given his testimony concerning the causation of Mangasarian's lung cancer but not his competency to testify. *See id. Accord Schenck v. Roger Williams General Hospital*, 119 R.I. 510, 382 A.2d 514 (1977). In light of Dr. Marzilli's education, experience, and role as Mangasarian's primary treating physician, it is apparent that he did indeed possess "special knowledge" and information regarding his patient's medical history and course of treatment. Accordingly, we believe the trial justice committed no abuse of discretion in allowing Dr. Marzilli to testify as an expert.

## II

## WHETHER THE TRIAL JUSTICE ERRED IN ALLOWING EVIDENCE OF AGGRAVATION ON CROSS-EXAMINATION

The defendants next allege that the trial justice erred in allowing plaintiff to elicit evidence of aggravation from defendants' witness on cross-examination. Doctor George Vincent Coleman testified as an expert witness for defendants. Doctor Coleman, a practicing oncologist, stated on direct examination that his opinion, based upon "a reasonable degree of medical certainty," was that the trauma resulting from the automobile accident did not cause Mangasarian's lung cancer. In fact, Dr. Coleman testified, that relying upon his knowledge of the growth rate of comparable tumors, he estimated that Mangasarian's tumor began to grow in November of 1977.

On cross-examination, Dr. Coleman stated that although he excluded blunt trauma as a cause of a cancerous tumor, in his opinion, blunt trauma "can accelerate and can cause presentation of [a cancerous tumor]." In other words, Dr. Coleman was of the opinion that if cancer was already present in the body, blunt trauma could accelerate its growth and cause a tumor to appear. Doctor Coleman testified unequivocally that it was his belief that Mangasarian's cancer began in 1977, and he further acknowledged on cross-examination, over defense counsel's objections, that in his opinion the injuries sustained by Mangasarian did contribute, to a certain degree, to the growth of the cancerous tumor on his lung.

Essentially, the defense presented by defendants was that Mangasarian's cancerous condition pre-existed the injuries sustained in the automobile accident. After

raising that defense, defendants then sought to preclude plaintiff from demonstrating that if there was a preexisting cancer, it was aggravated by the trauma resulting from the accident. The defendants base this premise on the fact that plaintiff never raised the issue of aggravation. However, it was defendants who raised the issue of the pre-existing cancer. In *Quinn v. Poole*, 85 R.I. 280, 130 A.2d 364 (1957),[1] this court allowed evidence of aggravation of a pre-existing injury, despite the fact that it had not _____ been pleaded, relying on the fact that the defendant's attorney conducted a vigorous cross-examination regarding the pre-existing condition. The court stated:

> "Indeed defendant's counsel cross-examined at great length about previous back injuries suffered by plaintiff. This being so, the trial justice would be justified in charging the jury that they might consider this evidence of the effect, if any, of the instant collision on any pre-existing condition they may have found to exist." 85 R.I. at 286, 130 A.2d at 367.

Accordingly, we believe that since defendants in the instant case raised the issue of pre-existing injury as a defense, they cannot then seek to preclude evidence of the probability that such pre-existing condition was aggravated by the traumatic injuries sustained in the accident.

The law is well-settled in this jurisdiction that in a personal-injury action, the defendants take their victims as they find them. *Lebon v. B.L. & M. Bottling Co.*, 114 R.I. 750, 339 A.2d 272 (1975); *Golden v. R.L. Greene Paper Co.*, 44 R.I. 226, 116 A. 577 (1922). If, as defendants allege, Mangasarian's cancer pre-existed the traumatic injuries he received in the accident, it is not improbable that he was in a weakened and vulnerable physical condition when those injuries were sustained. As a result, the jury could logically infer that even if those injuries did not cause the cancer to appear, at the very least the injuries could have caused the cancer to progress more rapidly

than it would have in an otherwise healthy body. Accordingly, it is not a bar to recovery that defendants' actions may have merely aggravated Mangasarian's cancerous condition.

### III

### WHETHER THE TRIAL JUSTICE ERRED IN HIS CHARGE TO THE JURY

■ The defendants next allege that the trial justice erred in refusing to give certain instructions to the jury. Specifically, defendants' request No. 5 states: "[s]hould you reach the issue of damages, you may only compensate the plaintiff for those physical injuries which were proximately caused by the accident. *Sweet v. Hemingway Transport, Inc.*, 114 R.I. 348, 333 A.2d 411 (1957). If there are several potential causes of a given injury or illness, you may only compensate the plaintiff for the injury, if you find, based on expert testimony, that the injury in question most probably resulted from the accident."

The trial justice instructed the jury as follows:

> "You must determine what injuries were proximately caused by that accident—and proximate cause is defined as that cause which, in the natural and probable course of events, uninterrupted by any other independent, intervening cause, caused the injuries and damages which flow therefrom. In other words, for the Defendant to be responsible, he must have caused the injuries to the decedent, and that must be proven to you by the Plaintiff by a fair preponderance of the evidence."

The trial justice then went on to instruct the jury that if it found that Mangasarian's death from cancer was in no way attributable to the injuries received as a result of the accident, then the estate of Mangasarian was not entitled to any compensation. The trial justice further instructed the jury

---

**1.** We should note that *Quinn v. Poole* was decided at a time when pleading requirements were more stringent than they have been since adoption of the Rules of Civil Procedure in 1965. A

fortiori, the raising of the issue of aggravation under modern rules of notice pleading, in the circumstances demonstrated in the instant case, poses no serious pleading problem.

regarding aggravation and basic causation as follows:

"There has been testimony that a possible malignancy was present at the time of the accident, that it was a pre-existing condition, and that the injuries received in that accident aggravated that pre-existing injury and actually caused the death of John Mangasarian, so I submit, ladies and gentlemen of the jury, as to the issue of whether or not that cancer is causally connected, if you find as a fact that it was a pre-existing condition which was aggravated by the injuries and led to the wrongful death, you must compensate the estate under the Wrongful Death Statute. If you find the cancer was actually caused by the blunt trauma to the left side, again, you must compensate the estate under the Wrongful Death Statute as I have instructed during the course of this charge."

The defendants also assign as error the failure of the trial justice to give request No. 6, which states: "[s]uggestions of counsel during final argument concerning the alleged value of pain and suffering, or the amounts to be awarded therefore, are of no binding force on your determinations as you alone are the sole judges of what, if anything, should be awarded for pain and suffering. *Worsley v. Corcelli*, [119 R.I. 260], 377 A.2d 215 (1977)."

The general charge given by the trial justice was as follows:

"The attorneys made their final arguments to you yesterday afternoon. If, during the course of those statements or arguments they referred or alluded to certain facts or bits and pieces of information, and your recollection differs, by all means accept your recollection as to what transpired during the course of this trial. This is your function, and your function alone.

" * * *

"You must determine what the facts are, and *you must compensate the estate, depending upon what you determine the facts are in this particular case.*" (Emphasis added.)

The law is well settled in this jurisdiction that when a request to charge a jury is fairly covered by the general charge, refusal to grant the specific request is not reversible error. *Caparco v. Lambert*, 121 R.I. 710, 402 A.2d 1180 (1979); *Dixon v. Royal Cab, Inc.*, 121 R.I. 110, 396 A.2d 930 (1979). A review of the general charge given by the trial justice reveals that defendants' requested charges were, in essence, covered by the general charge.

Accordingly, it was not reversible error for the trial justice to refuse to give the specific charges.

## IV

### WHETHER THE TRIAL JUSTICE ERRED IN DENYING DEFENDANTS' MOTION FOR A NEW TRIAL

■ This court has long held that in passing upon a motion for a new trial, the trial justice must exercise his or her independent judgment and review all the evidence in the case in the light of the charge to the jury, passing on the weight of the evidence and the credibility of the witnesses. *Bader v. Alpine Ski Shop, Inc.*, 505 A.2d 1162 (R.I. 1986); *Mouchon v. Erikson's, Inc.*, 448 A.2d 776 (R.I. 1982); *Barbato v. Epstein*, 97 R.I. 191, 196 A.2d 836 (1964). If the trial justice concludes that the evidence is so evenly balanced that reasonable minds could draw differing conclusions therefrom, he or she must approve the verdict regardless of his or her own doubts about its correctness. If, after review, he or she concludes that the verdict is not a proper response to the evidence, he or she should order a new trial. *Mouchon*, 448 A.2d at 778.

On appeal, a trial justice's ruling on a motion for a new trial will not be disturbed unless he or she misconceived or overlooked material evidence or was otherwise clearly wrong. *Taft v. Cerwonka*, 433 A.2d 215 (R.I. 1981); *Powers v. Carvalho*, 117 R.I. 519, 368 A.2d 1242 (1977).

In passing upon the motion for new trial in the instant case, the trial justice stated, in part:

"I have gone over my trial notes. I have gone over the file. I have reflected on the course of the trial, and I am satisfied that the jury's verdict did, in fact, respond to the evidence and the law as I gave it to them in this particular case. There is no question that Dr. Marzilli, Rocco Marzilli, testified in his considered judgment he felt the probability existed that the blunt trauma caused the cancer. Dr. Coleman testified that it was not his opinion it would cause the cancer, however, he did testify to a reasonable degree of medical certainty that the blunt trauma to the left side of the plaintiff's body could have, in fact, aggravated the pre-existing condition.

"Dr. Coleman testified unequivocally in his opinion that tumor was present in the chest of the plaintiff in 1977. He testified as to the geometric progress of that tumor every sixty days, if multiplied, and he testified without any question blunt trauma of this type could, in fact, aggravate that pre-existing tumor which he said was in the chest of the plaintiff.

"I am satisfied that the jury chose to believe the testimony of Dr. Coleman. I charged them as in passing upon the credibility of an expert witness, they could either accept his testimony in whole, they could accept a portion of it, and they could completely reject it, and that was strictly within their province as triers of the fact. I told them if an expert witness gave an opinion that was unimpeached or uncontradicted they had to consider that in the course of their deliberations. However, they could deal with it as they, the sole finders of the fact, saw fit to do. It is obvious to me that they accepted the testimony of Dr. Coleman, and they had also accepted the fact that this trauma was the proximate cause of his death, his death resulting from the injuries, those injuries which aggravated that pre-existing tumor in his chest."

After review of the record in this case, our opinion is that the trial justice neither overlooked any material evidence nor misconceived the law of the case. Relying upon the testimony of either Dr. Marzilli or Dr. Coleman, the jury had ample evidence suggesting that Mangasarian's death by cancer was proximately related to the injuries sustained in the automobile accident. Accordingly, the trial justice's decision must be given great weight and will not be disturbed by this court.

For the reasons stated, the defendants' appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers in the case are remanded to the Superior Court.