Daniel HAYHURST

v.

Ronald LaFLAMME et al.

No. 79–428–Appeal.

Supreme Court of Rhode Island.

Feb. 17, 1982.

---

Robert J. Rahill, Pawtucket, for plaintiff.

Carroll, McHugh & Pirraglia, John G. Carroll, Douglas H. Smith, Providence, for defendants.

1. The trial justice found the jury's computation of $2,990 in lost wages, based on an earning capacity of $115 per week, when calculated for the twenty-eight weeks during which Daniel was disabled, to be mathematically incorrect.

## OPINION

KELLEHER, Justice.

The plaintiff Daniel Hayhurst brought suit in Superior Court for damages resulting from a 1974 motor-vehicle accident in which the motorcycle he was riding collided with the automobile driven by the defendant Ronald LaFlamme. At the time of the accident, Daniel and Ronald were aged twenty and seventeen, respectively. George LaFlamme, Ronald's father, was also named as a defendant by virtue of his ownership of the vehicle driven by his son. A jury determined that Daniel had been 60 percent negligent in causing the accident. The jury returned a verdict awarding Daniel damages in the amount of $9,257.06. In accordance with our system of comparative negligence, the trial justice reduced this award by the percentage of Daniel's negligence for a total sum of $3,703.03. The special interrogatories answered by the jury in reaching its verdict indicate that the amount awarded is comprised of the following damages: (1) $2,745.06 in medical bills, (2) $2,990 in lost wages, (3) $2,000 for pain and suffering, and (4) $1,522 in property damages. It should be noted that the sum awarded for pain and suffering is limited to the period from the date of the accident to the date of trial, August 31, 1974, to May 15, 1979. The trial justice had instructed the jury that they could not consider plaintiff's potential future pain and suffering, if any, because no evidence of his life expectancy had been produced. The plaintiff's counsel offered no objection to this charge.

Dissatisfied with the amount of the verdict, plaintiff filed a motion for additur. After a hearing on the motion, the trial justice increased the damages for lost wages to $3,220 [1] and for pain and suffering to $30,000, concluding that a total sum of $31,522 [2] was a fair and adequate award for

2. It is assumed that the trial justice derived this figure by adding the sum of $1,522 awarded for property damages to the amount he assessed for pain and suffering while, for reasons which

all damages Daniel sustained. This figure was then adjusted to reflect the degree of Daniel's negligence and the judgment previously entered in his favor in the amount of $3,703.03. Ultimately, an order was entered on June 28, 1979, granting plaintiff an additur in the amount of $8,906 or, alternatively, a new trial should defendants fail to pay the additur within thirty days of the entry of the judgment. The defendants appealed directly to this court, challenging only that portion of the trial court's decision awarding plaintiff an additur based upon an assessment of $30,000 for pain and suffering.

The injuries Daniel sustained in the collision were substantial, requiring seven days of hospitalization. A witness to the accident testified that when the two vehicles collided, the force of the impact caused Daniel first to be thrown from his motorcycle onto the hood of the LaFlamme car and eventually to land on the pavement alongside the car and within a few feet of his bike. Daniel was rendered unconscious, and the bone of his right arm was broken and protruding through the skin. He apparently drifted in and out of consciousness at the scene before the ambulance arrived to transport him to the hospital.

Medical exhibits introduced into evidence reveal that Daniel had sustained a fractured pelvis, a comminuted (splintered) and compound (protrusion of bone through the skin) fracture of the right arm, a concussion, multiple abrasions of the chest and low-back regions, and multiple lacerations of his lower face, lips, and tongue. The reports also indicate that when first admitted to the hospital, he experienced some abdominal tenderness. Daniel underwent surgery for debridement and closure of the facial and oral lacerations, and reimplantation of a loosened tooth. Additional dental work was necessary to repair some chipped teeth. The treating orthopedic surgeon testified that the pelvic fracture was undisplaced and, aside from the moderate pain Daniel endured during the initial few weeks following the accident, the fracture healed

free of complications without treatment. Daniel's arm was placed in a cast extending from his shoulder to his wrist, and antibiotics were administered intravenously to prevent infection of the bone. The surgeon indicated that a compound fracture such as that suffered by plaintiff is considered a serious injury because of the potential for infection of the bone as well as other complications that may accompany this type of fracture. Although the initial cast with which Daniel had been fitted had to be removed and replaced with a different type of cast because of pain and improper healing, the doctor noted that the arm healed properly.

Describing the effects of his injuries, Daniel stated that while lying on the ground awaiting the ambulance, he was aware that his arm had been badly broken. He also recalled pain emanating from his face and a great deal of blood flowing from his mouth. His arm, he remarked, had been in a cast for at least six months. As of the date of trial he continued to experience arm discomfort in terms of limited use; he felt he had less bending motion and strength in the arm than before the injury. With regard to his other injuries, Daniel testified that he was bothered by his teeth and that for two months after the accident he limped when he walked because of pain and weakness from the pelvic injury. Finally, Daniel indicated that in March of 1975, some seven months after the accident had occurred, his physician advised him that he could resume working but could not engage in any strenuous activities.

When ruling on plaintiff's request for an additur, the trial justice correctly considered the legal standard by which such a request must be evaluated: a jury award for pain and suffering may not be disturbed unless the court determines that such demonstrable disparity exists between the amount assigned by the jury and the actual damages sustained that the verdict is unresponsive to the controversy and fails to render substantial justice between the par-

are not clear, omitting to include the amounts awarded for medical bills and lost wages.

ties. *Kelaghan v. Roberts*, R.I., 433 A.2d 226, 229 (1981); *Roberts v. Kettelle*, 116 R.I. 283, 301, 356 A.2d 207, 218 (1976); *Handy v. Geary*, 105 R.I. 419, 437, 252 A.2d 435, 444–45 (1969). Stated otherwise, a damage award may be disregarded by the trial justice and a new trial granted only if the award shocks the conscience or indicates that the jury was influenced by passion or prejudice or if the award demonstrates that the jury proceeded from a clearly erroneous basis in assessing the fair amount of compensation to which a party is entitled. *Bruno v. Caianiello*, R.I., 404 A.2d 62, 65 (1979); *Ruggieri v. Beauregard*, 110 R.I. 197, 201, 291 A.2d 413, 415 (1972).

■ We are satisfied that the trial justice applied these standards properly in concluding that the award of $2,000 for Daniel's pain and suffering was inadequate. Furthermore, the transcript discloses that the trial justice reached his decision after exercising his own independent judgment in weighing the evidence and in assessing the credibility of the witnesses who testified at trial. We have stressed repeatedly that motions for additur, remittitur, or a new trial are to be reviewed by the trial justice from the prospective of a seventh juror. After sifting through the material evidence and passing on the credibility of the witnesses, the trial justice must then refer to those aspects of the case which have prompted his ruling. If these obligations are met, this court will accord great weight to the trial justice's determination concerning the adequacy of the jury's award. *Kelaghan v. Roberts*, R.I., 433 A.2d at 229; *Roberts v. Kettelle*, 116 R.I. at 301–02, 356 A.2d at 218. *See* 1 Kent, *R.I. Civ. Prac.* § 59.4 at 440–41 (1969).

In the instant case the trial justice reviewed the evidence relating to the injuries Daniel sustained, noting that he considered them to be serious. He further remarked that much of the evidence submitted on this issue had been supplied by Daniel and his orthopedic surgeon, both of whom the trial court found to be credible witnesses. In addition, the trial justice expressed his belief that the jury had great difficulty with the concept of monetary compensation for pain and suffering as manifested by its request, forty-five minutes after retiring to deliberate, for clarification on the manner by which a determination of an appropriate amount for pain and suffering was to be reached.

■ Having reviewed the record, we join the trial justice in his opinion that the sum of $2,000 as compensation for pain and suffering is inadequate and fails to accord plaintiff substantial justice. However, the trial court's finding that "a figure of $30,000 would be closer to a fair and adequate award for pain and suffering" is altogether another matter. This sum was attained by multiplying plaintiff's special damages—medical expenses and lost wages—by a factor of five. Explaining his rationale, the trial justice remarked:

> "[T]he Court feels that after some twenty odd years of practice [law practice] that the correct evaluation of this case to be more in the area of a multiple three times the so-called special damages, that is the medical bills and lost wages, or five times the special damages in this case. The Court feels that the formula of three times the special damages is used quite often in evaluating cases by attorneys throughout the State, and has been used for quite some time where the injuries are not as serious as they were in this case. Where the injuries [are] as serious as they are in this case, the Court believes that a fair—a more adequate award is in the area of five times the special damages, the medical bills and the lost wages."

We cannot share the trial justice's belief that Daniel is entitled to $30,000 for pain and suffering notwithstanding the enormous discrepancy between this sum and the amount awarded by the jury. Nor can we subscribe to his views on the appropriateness of the method he employed to arrive at this figure. It may well be that experienced counsel in this state use this mathematical formula in estimating the dollar value of a personal-injury case, although we cannot say how the numbers three and five

came to be preferred over other numbers. In this regard it is interesting to note that among many ancient cultures, these numerals were regarded as sacred and were assigned mystical qualities.[3] We do not mean to suggest that there is a correlation between these ancient mythologies and the selection of the numbers three and five in the formula used by members of the bar to estimate pain-and-suffering damages, but it is fascinating to ponder the implications of such ancient perceptions in these modern times. Nevertheless, it is our opinion that this method of computation should be confined to its current use and play no role in proceedings before the courts.

This is not the first occasion this court has been asked to review the suitability of relying on some type of mathematical methodology to ascertain a reasonable award for pain and suffering. In *Worsley v. Corcelli*, 119 R.I. 260, 377 A.2d 215 (1977), the plaintiff's counsel sought to introduce various mathematical guidelines for the jury to use in aid of its calculation of pain-and-suffering damages. The methods proposed were: (1) to multiply the plaintiff's out-of-pocket expenses by some number, such as three or four, (2) to use the plaintiff's annual salary as a standard for compensation, (3) to fix a dollar value for pain and suffering on a per diem basis, and (4) to award a percentage of the ad damnum, such as 10 percent, to determine a value for the entire case. *Id.* at 264, 377 A.2d at 217. The trial justice refused to permit these suggestions to be presented to the jury in counsel's closing argument because he believed that the suggestions were not based on the evidence adduced at trial and might have a prejudical impact on the jury.

In faulting the trial justice's decision, the court in *Worsley* chose to follow the lead taken by those jurisdictions that permit trial counsel to argue the so-called per diem

method of computing damages for pain and suffering. Although not dispositive, it is significant that the court declined to place its imprimatur on the use of a formula calling for the multiplication of the plaintiff's out-of-pocket expenses by some number, in that case three or four, to arrive at a figure for pain and suffering. Furthermore, in authorizing the use of a per diem argument, the court indicated that to safeguard against potential prejudicial effects, the trial justice should instruct the jury that arguments of counsel during summation are not binding and may be discounted as " 'Lawyers' Talk.' " It was also stressed that "no particular formula or rule of thumb is available either to a jury or to this court for computing the damages which are due to a plaintiff for pain and suffering." *Id.* at 265, 377 A.2d at 217.

In the proceeding presently before us the multiplication formula previously rejected in *Worsley* was not merely employed by the trial justice as an aid but rather was applied by him mechanistically as a binding rule to arrive at a sum for plaintiff's pain and suffering. Sitting in his capacity as a seventh juror, the trial justice, we think, was in error to have done so. We would also point out that this method of calculation is particularly unacceptable because, by including the amount of lost wages in the figure which is to be multiplied, the resulting award for pain and suffering is weighted in favor of the more affluent plaintiffs.

Having adopted the trial justice's finding that the jury's award of $2,000 is inadequate, but rejecting his assessment of $30,000 as a reasonable award, we must now determine an appropriate disposition for the case. Under these circumstances, application of the appellate rule relating to the adequacy of pain-and-suffering damages appears warranted. In the past when it has been necessary to disregard the decision of

3. For example, the Babylonians, Egyptians, Greeks, and Romans considered these numbers, particularly the numeral three, to be magical; and classical mythology abounds with references to the number three: the three-headed Cerberus, the three Fates, the three Graces, the three Furies. As for the number five, some of

these ancient peoples, believing it to be symbolic of completeness, pronounced this numeral most holy and lucky. *See generally,* Budge, *Amulets and Superstitions,* ch. XXVI at 427, 428–431 (1978); *see also* Cavendish, *Encyclopedia of the Unexplained,* "Numerology," 158–59 (1974).

a trial justice in this context, we have exercised our own judgment and relied upon our experience in the affairs of life as well as our knowledge of social and economic matters to ascertain a suitable amount that will compensate plaintiff fairly for pain and suffering endured. *Kelaghan v. Roberts*, R.I., 433 A.2d at 230; *Bruno v. Caianiello*, R.I., 404 A.2d at 64–65; *Wood v. Paolino*, 112 R.I. 753, 757–58, 315 A.2d 744, 746 (1974).

We have already commented on the evidence in the record delineating the nature and extent of the pain and suffering Daniel endured. Moreover, we see no reason to doubt the trial justice's findings regarding the credibility of such evidence in view of his opportunity to make his own independent assessment of the witnesses and the affidavits submitted by Daniel's physicians. Therefore, we are satisfied that the record provides us with a sufficient foundation upon which to base our own determination of a fair and reasonable amount to award Daniel in this regard.

We believe that an award in the amount of $15,000 for pain and suffering will provide Daniel adequate compensation and render substantial justice between the litigants. To this figure the sum of $2,745.06 in medical bills, $3,220 in lost wages, and $1,522 in property damages should be added. Thus, the total award due Daniel is $22,487.06 which, when reduced by his percentage of negligence, entitles him to a judgment in the amount of $8,994.82 plus interest and costs, or in the alternative he is entitled to a new trial.

The defendants' appeal is sustained, the order appealed from is vacated, and the case is remanded to the Superior Court for a new trial unless the defendants, within ten days subsequent to the filing of this opinion, consent to the additur awarded by this court.