**Ruben DILONE**

v.

**ANCHOR GLASS CONTAINER CORPORATION et al.**

**No. 98–439–Appeal.**

Supreme Court of Rhode Island.

July 12, 2000.

William Filippo, Providence, for plaintiff.

Paul A. Anderson, James A. Ruggieri, Carol Nicholson Glick, Providence, for defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This appeal arises from a products liability action in which the plaintiff, Ruben Dilone (Dilone), suffered severe injuries when he opened a bottle of Veryfine juice that was defective and shattered in his hands. A jury returned a $75,000 award in favor of Dilone. Dilone subsequently filed a motion for a new trial, or in the alternative an additur, on the ground that the award for pain and suffering was inadequate. The trial justice ordered a new trial on the issue of damages, or in the alternative an additur of $50,000. The defendants, Northbrook Property and Casualty Company (succeeding the interest of Anchor Glass Container Corp., d/b/a Diamond Bathhurst Glass Co.) (hereinafter Northbrook), New England Apple Products Co., Inc., d/b/a Veryfine and Tropic Juice Co., Inc. (collectively Veryfine), and Doris Espinal, d/b/a Espinal Market (Espinal Market), have appealed. Veryfine also appeals the trial justice's denial of its motion for judgment as a matter of law. The parties were directed to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel, and examining the memoranda submitted by the parties, we are satisfied that cause has not been shown and we shall proceed to decide the case at this time.

### Facts and Travel

On July 2, 1987, Dilone lacerated his right wrist while opening a bottle of Veryfine juice at the Espinal Market in Providence, Rhode Island. Soon thereafter, Dilone was driven to St. Joseph Hospital, where the laceration was stitched. As a result of the incident, Dilone's median nerve in his right wrist was damaged, causing pain and a loss of feeling in his thumb, index finger, middle finger, and half of the ring finger on his right hand. Dilone underwent three surgeries and extensive therapy in an effort to correct the damage to the nerve, at a total cost of more than $24,000 for medical expenses. At trial, Dilone's treating physician, Leonard Hubbard, M .D. (Dr. Hubbard), testified that the three surgeries were unsuccessful. He testified that during one of the surgeries, the sural nerve had been harvested from his right leg and implanted in his right wrist in an attempt to revive the normal sensation in his wrist. Dilone

testified that he has experienced a cold sensation in these fingers since the incident, and has worn a TENS unit to help alleviate the pain. Doctor Hubbard further testified that Dilone has a permanent impairment rating of thirty-nine percent of the upper extremity, or twenty-three percent whole body impairment.

Dilone also presented the testimony of Professor Bar-on Braun Isa (Professor Isa), an engineer and physicist, who testified that the bottle had broken as a result of twisting the cap top. Professor Isa further testified that the thickness on the side wall of the glass bottle was well below the standards for thickness of glass established by Anchor Glass, and that the thin point of the glass was exactly where the fracture began.

At the close of the evidence,[1] Veryfine moved for judgment as a matter of law, contending that Dilone had failed to prove that the bottle was in a defective condition when it left Veryfine. The motion was denied, and thereafter, the jury returned a verdict of $75,000 for Dilone. Subsequently, Veryfine renewed its motion for judgment as a matter of law, and Dilone filed a motion for a new trial or additur on the issue of damages. The trial justice denied Veryfine's motion, concluded that the jury award compensating Dilone for pain and suffering was inadequate, and granted a new trial on the issue of damages unless defendants agreed to an additur of $50,000. Additional facts will be supplied insofar as they are pertinent to the issues raised in this appeal.

## Discussion

■ On appeal, the defendants argued that the trial justice erred in granting Dilone's motion for a new trial on damages or in the alternative an additur of $50,000.

They contended that based upon the evidence presented at trial, the verdict of $75,000 was neither unresponsive to the controversy, nor did it shock the conscience of the court. Specifically, defendants argued that the nature and extent of Dilone's injuries were seriously questioned, particularly Dilone's "alleged continuing pain and suffering." They argued that the award of $75,000 clearly compensated Dilone for his medical bills, which were roughly $25,000. They also contended that because Dilone had no meaningful employment at the time of the accident, lost wages and earning capacity were not claimed, therefore $50,000 represented the jury's award for pain and suffering.[2] In support of their position, defendants argued that the jury may have found that other injuries that occurred both before and after the incident may have contributed to Dilone's pain. Further, they suggested that Dilone's credibility was suspect because of his criminal record and altercations he had with police officers after the accident, which indicated his hand could be used in an aggressive manner. Further, defendants pointed to the testimony of Dr. Hubbard, which suggested that Dilone had full range of motion and only slightly diminished grip strength. Finally, the defendants argued that an initial impairment test found only a 10 percent upper-extremity disability and a 6 percent whole person disability, and therefore the jury could have chosen to accept this initial finding.

■ This Court has consistently held that "a damage award may be disregarded by the trial justice and a new trial granted only if the award shocks the conscience or indicates that the jury was influenced by passion or prejudice or if the award demonstrates that the jury proceeded from a

1. We note that the defendants did not put on any evidence.

2. In their briefs, defendants Espinal Market and Northbrook contended that the total amount of the judgment pursuant to the trial justice's order would be $231,250. In reaching this figure, Espinal Market includes the additur and interest. However, we note that the trial justice did not include, nor was it proper to include, the interest that had accrued in determining what amount would adequately compensate Dilone for his pain and suffering.

clearly erroneous basis in assessing the fair amount of compensation to which a party is entitled." *Shayer v. Bohan,* 708 A.2d 158, 165 (R.I.1998) (quoting *Hayhurst v. LaFlamme,* 441 A.2d 544, 547 (R.I. 1982)). Further, the standard of review on a motion for a new trial is also well settled; the trial justice must review the evidence passing upon the weight of the evidence and the credibility of the witnesses. *Pimental v. D'Allaire,* 114 R.I. 153, 157–58, 330 A.2d 62, 64–65 (1975) (citing *Dawson v. Rhode Island Auditorium, Inc.,* 104 R.I. 116, 122–23, 242 A.2d 407, 412 (1968)).

We are satisfied that the trial justice properly applied this standard in concluding that the award of $75,000 was inadequate. In *Hayhurst,* this Court held that "motions for additur, remittitur, or a new trial are to be reviewed by the trial justice from the prospective of a seventh juror," and "[a]fter sifting through the material evidence and passing on the credibility of the witnesses, the trial justice must then refer to those aspects of the case which have prompted his ruling." 441 A.2d at 547. In so doing, "this [C]ourt will accord great weight to the trial justice's determination concerning the adequacy of the jury's award." *Id.* (citing *Kelaghan v. Roberts,* 433 A.2d 226, 229 (R.I.1981); *Roberts v. Kettelle,* 116 R.I. 283, 301–02, 356 A.2d 207, 218 (1976)).

Here, the trial justice, in a detailed bench decision, stated with specificity the evidence that prompted his decision. First, he noted that after reviewing the medicals filed in the case at some length, "the overwhelming credible testimony established that the particular bottle * * * was defective." He then stated the standard that the court must adhere to before disturbing a jury's finding as it relates to damages. After noting that he had reviewed Dilone's testimony about his injuries, he remarked that Dilone, according to the life tables introduced into evidence, had a life expectancy of 34.2 years, and that this was material and relevant evidence "because of the medical determina-

tion that [Dilone] had a permanent partial impairment of the use of the upper right extremity." Finally, we note that the trial justice thoroughly summarized the evidence, including the testimony of Dilone, the photographs that depicted scarring, the medical bills, the extensive medical history, and numerous reports of the doctors. The trial justice concluded by remarking that the jury, in assessing the damages for pain and suffering, erred. He stated that,

"in the Court's judgment, the past ten years of pain and suffering for the nature of the injury that he sustained, a nerve injury, for the pain associated with the nerve grafts, and for the continued use of the TENS unit to assist in minimizing pain, and for future pain and suffering for 34.2 years, the sum of $50,000 shocks my conscience. It is grossly inadequate. * * * [T]here is only two possibilities to explain the jury's award of $50,000 for pain and suffering and future pain and suffering, permanent partial impairment. One of those explanations is that the jury misconceived the evidence, or the significance of the evidence, or possibly the jury considered that because the defendant had a criminal record * * * they ignored the evidence. * * * I rather believe that the jury, in the time allotted, misconceived the significance of the injuries sustained and the resulting pain and suffering endured."

In light of the record, we concur with the decision of the trial justice that $50,000 as compensation for pain and suffering is wholly inadequate. The trial justice was within his discretion, based on that amount and the duration of plaintiff's pain and suffering, to order a new trial, or in the alternative, an additur of $50,000. We are satisfied that the trial justice's additur of $50,000 for pain and suffering in this case will provide Dilone adequate compensation and render substantial justice.

■ Finally, defendant Veryfine maintained that the trial justice erred in reject-

ing its motion for judgment as a matter of law because Dilone failed to prove that the bottle was in a defective condition when it left Veryfine. Specifically, Veryfine contended that Dilone did not establish that the bottle was in an unreasonably dangerous condition, and therefore Dilone failed to meet the standard of proof for a products liability action enunciated in *Ritter v. Narragansett Electric Co.*, 109 R.I. 176, 283 A.2d 255 (1971). We disagree.

In initially denying the motion, the trial justice found that:

"The defect, on the evidence before the jury, took place at the time the bottle was formed; perhaps in the cooling process, but it existed from the time the bottle was shaped and the cooling process took place. There is no evidence at all that anything in the bottle other than the thinness of one side of the bottle caused the bottle to fail when the consumer attempted to open it using clockwise and counter-clockwise torque to remove the cap. There is no evidence before this jury that while in possession of New England Apple Products Company or in possession of Espinal Market that they caused damage to the bottle which would relieve one prior in time having custody and control of that bottle from potential liability."

Veryfine contends that the testimony of Professor Isa, proffered by Dilone, did not satisfy Dilone's burden of establishing that the juice bottle was unreasonably dangerous, only that the bottle was "probably quite unsafe." Specifically, Professor Isa testified that the bottle,

"was defective according to the specifications and it's most probably dangerous to someone because this is a very thin— it's thinner than your glasses that you're wearing and your glasses don't get any twist or torque applied to them while you're wearing them. So, yes, it's probably quite unsafe to use this bottle."

Although Professor Isa did not explicitly refer to the defect in the bottle as "unreasonably dangerous," as Veryfine contends she should have done, she did state that the bottle was "quite unsafe" and defective. We have held that there are no magic words that must be used by an expert witness to trigger liability, and we have consistently declined to exalt form over substance. *See Gallucci v. Humbyrd,* 709 A.2d 1059, 1066 (R.I.1998). In *Gallucci,* we rejected the notion that lawyers and their expert witnesses "must recite precisely constructed talismanic incantations." *Id.* Here, Dilone's attorney's questioned Professor Isa about whether the bottle was so defective that it was unreasonably dangerous to a user. In response, Professor Isa, although not stating precisely that the defect was unreasonably dangerous, answered the question in the affirmative, stating it was in fact defective and "quite unsafe." We are satisfied that the trial justice was correct in denying Veryfine's motions for judgment as a matter of law because the evidence established by a clear preponderance that the bottle was defective, and therefore Veryfine was strictly liable.

Further, we are satisfied that, in the context of this case, a plaintiff does not have to present evidence that every defendant in the chain of commerce tampered with the product or contributed to the defect. Because defendant Veryfine failed to put forth any evidence that something other than the thinness of one side of the bottle caused the bottle to shatter when the consumer attempted to open it, the trial justice was correct in denying Veryfine's motions for judgment as a matter of law.

### Conclusion

For the foregoing reasons, the defendants' appeals are denied, the order appealed from is affirmed, and the case is remanded to the Superior Court for a new trial on the issue of damages unless the defendants, within fourteen days subsequent to the filing of this opinion, consent to the additur awarded by the trial justice.