DECISION
Before this Court, pursuant to Rule 59 of the Super. R. Civ. P. and following a jury verdict in their favor, is plaintiffs' Motion for a New Trial and/or Additur. The defendants object to the plaintiffs' motion.
 Facts/Travel
The plaintiffs, Roland A. LaPierre (LaPierre) and Agnes Teto (Teto), brought an action for damages against the Burrillville Racing Association, d/b/a Lincoln Greyhound Park, and WMS Industries (collectively defendants) alleging negligence. On or about April 2, 1998, LaPierre was a patron at Lincoln Greyhound Park and sustained injuries when he fell off a stool manufactured by defendant WMS Industries. Liability was admitted. The sole issue to be determined by the jury was the appropriate amount of damages, if any, for plaintiff LaPierre's pain and suffering and lost wages and the appropriate amount of damages, if any, for plaintiff Teto relative to her derivative loss of consortium claim.
After a three day trial, the jury awarded LaPierre damages in the amount of $350,000 and Teto damages in the amount of $45,000 for their respective claims. Accordingly, judgment on the verdict entered for the plaintiffs.
Thereafter, the plaintiffs filed this timely motion seeking a new trial on the issue of damages or, in the alternative, an additur. After review of the parties' filings and hearing oral arguments on July 20, 2001, this Court renders the following decision.
 Standard of Review
A jury's damage award may be disregarded and a new trial granted "only if the award shocks the conscience or indicates that the jury was influenced by passion or prejudice or if the award demonstrates that the jury proceeded from a clearly erroneous basis in assessing the fair amount of compensation to which a party is entitled." Dilone v. Anchor Glass Container Corp., 755 A.2d 818, 820-21 (R.I. 2000) (citations omitted). However, an additur is a technique that may be used to reassess an erroneous damage award. Michalopoulos v. C D Restaurant, Inc.,764 A.2d 121, 125 (R.I. 2001). As such, it provides the trial justice with "a means of avoiding unnecessary relitigation of the same issues and will afford litigants just and speedier resolutions." Id. Thus, upon finding that a new trial is warranted on the question of damages and before granting same, a trial justice must allow a defendant an opportunity to assent to an additur. Id.
Further, the role of a trial justice when reviewing a motion for a new trial is also well-settled in this jurisdiction. The trial justice, sitting as an extra juror, must "independently weigh, evaluate and assess the credibility of the trial witnesses and evidence." Graff v. Motta,748 A.2d 249, 255 (R.I. 2000) (quoting Morrocco v. Piccardi, 713 A.2d 250, 253 (R.I. 1998) (per curiam)). He or she may accept some or all of the evidence and reject testimony because it is impeached or contradicted by other positive testimony or by circumstantial evidence, or because it is inherently improbable or at variance with undisputed physical facts or laws. Barbarto v. Epstein, 97 R.I. 191, 193, 196 A.2d 836, 837 (1964). The trial justice also may add to the evidence by drawing proper inferences. Id. at 193-94, 196 A.2d at 837. If after making an independent review of the evidence, the trial justice finds that the jury's verdict is against the fair preponderance of the evidence and fails to do substantial justice, the verdict must be set aside. See Reccko v. Criss Cadillac Co., Inc., 610 A.2d 542, 545 (R.I. 1992) (citing Sarkisian v. New Paper, Inc., 512 A.2d 831, 835 (R.I. 1986)). However, upon determining that the evidence is evenly balanced or is such that reasonable minds, in considering the same evidence, could come to different conclusions, then the trial justice must allow the verdict to stand. Graff, 748 A.2d at 255. Even though the trial justice "need not perform an exhaustive analysis of the evidence, he or she should refer with some specificity to the facts which prompted him or her to make the decision so that the reviewing court can determine whether error was committed." Reccko, 610 A.2d at 545 (citing Zarrella v. Robinson,460 A.2d 415, 418 (R.I. 1983)).
 Review of the Evidence
In their motion, the plaintiffs contend that the jury's award of damages was inadequate and failed to administer substantial justice between the parties. Further, the plaintiffs assert that the jury's damage calculations were made as a result of irrelevant and prejudicial evidence and do not fairly and accurately reflect the full extent of plaintiffs' damages.
The amount of $350,000, plaintiffs maintain, is an insufficient value for LaPierre's lost wages and pain and suffering. First, the plaintiffs argue that LaPierre's extensive medical evidence substantiated his claim of permanent disability as a result of the fall. Next, plaintiffs contend that an economist's testimony that LaPierre was entitled to $300,000 in lost wages was uncontradicted. From there, plaintiffs conclude that the jury awarded $50,000 for LaPierre's pain and suffering, only $5,000 more than Teto's $45,000 award for loss of consortium. The plaintiffs emphasize that LaPierre endured cervical spine fusion surgery, extensive medical and therapy interventions, as well as treatment for chronic pain which LaPierre asserts is present and will continue. In addition, LaPierre maintains that his activities remain markedly impaired. Therefore, plaintiffs contend, in light of the $45,000 award to Teto, a $50,000 award for LaPierre's pain and suffering is not responsive to the merits and fails to administer substantial justice between the parties.
In further support of their motion, plaintiffs argue that the jury verdict "may have been the by-product of inadmissible evidence." Pls.' Mot. for New Trial at 4. Specifically, plaintiffs reference the Court's denial of their motion in limine to exclude a portion of a surveillance tape of LaPierre taken on June 12, 2001, shortly before trial (video). In response to plaintiffs' contentions, the defendants essentially argue that in light of the quality of evidence presented by the plaintiffs, coupled with the credible evidence introduced by the defense, the jury award responded to the merits and should not be disturbed.
The video at issue depicts LaPierre entering an establishment that some, in the know, might consider unsavory. There is, however, no evidence to that effect. The depiction of this unadorned establishment was but one of several errands that plaintiff LaPierre ran on the morning in question. And the point of the video was that he ran those errands without marked difficulty. Despite plaintiffs' contention that the jury's viewing of the establishment's sign was irrelevant and meant to negatively influence the jury, the Court believes that it properly exercised its discretion in denying plaintiffs' motion in limine and that plaintiff suffered no prejudice from the sign's inclusion in the surveillance tape.
With respect to LaPierre's injury and physical condition, after careful review of the evidence, the jury found some evidence more compelling than other evidence. Notwithstanding LaPierre's contentions that he was unable to perform the daily activities of ordinary life and that his "life was over," a refrain which seemed to permeate the trial, the video depicted a man quite able to go about his errands during the course of a morning. Each errand, for example, entailed LaPierre's getting into and out of his automobile, fastening his seat belt, and looking left and right while driving his automobile. The Court notes that some of his movements may have been guarded by the end of the morning, but he was more than capable of making them. His physical activity contradicted his testimony.
Further, notwithstanding plaintiff's contention that his medical evidence (medicals) was virtually uncontested, these very medicals were replete with information that diminished the alleged severity of his condition and suffering. Plaintiff chose to underscore portions of his medicals which allegedly supported his current state of affairs. For example, plaintiffs relied on the affidavit of Dr. Phillip Lucas to establish the medical necessity for spinal surgery to treat LaPierre's herniated disc, as well as his related chronic and permanent pain. LaPierre also introduced medical records containing documentation of his neck, shoulder and finger pains, as well as his associated clinical depression. A thorough review of the documentation, however, lends itself to a quite different assessment of plaintiff's condition, with respect to its cause(s) and its extent. Plaintiff LaPierre had a history of incidents and health issues. For obvious reasons, he chose to gloss over them or ignore them during trial. However, this history was evidenced in his medical documentation and highlighted by the defense. For example, LaPierre had an established AMA permanent partial impairment to the whole person, spondylosis and carpal tunnel syndrome. Prior to the stool incident, his physician, Dr. Goodman, had documented LaPierre's need for ongoing supportive therapy. The documentation also evidenced his pre-stool-incident desire to alter his career in order to eliminate frequent movement in and out of an automobile and long trips. Furthermore, the jury had before it no medical bills, with the exception of Dr. Lucas' "running account." Nevertheless, LaPierre asked the jury to award damages based on his having been disabled virtually exclusively by the subject stool incident.
As to the loss of consortium claim, plaintiff's argument that she has "lost her husband" is a contention diminished by the evidence. Accepting that LaPierre sustained a significant injury in the instant accident, the testimony and the evidence — particularly the video — belies the contention that his life "is over." In addition, a thorough reading of LaPierre's medicals suggests that the physical problems, which arguably effected the quality of life with his spouse, pre-dated the stool incident.
The Court notes that the plaintiffs conclude without substantiation that the jury accepted the economist's opinion and awarded $300,000 in lost wages, and therefore, only $50,000 for pain and suffering. The issue was one of fact. The jury, during its deliberations, "is always free to accept, to reject, or to accord any amount of weight it chooses" to an expert's testimony. State v. Rieger, 763 A.2d 997, 1004 (R.I. 2001) (citing State v. Vargus, 118 R.I. 113, 127, 373 A.2d 150, 157 (1977)). We do not know the thought processes or bases for the jury's ultimate figure. The plaintiffs are merely speculating. The bottom line is, however, that the verdict was unquestionably within the realm of what a trier of fact could award. The verdict was responsive to the merits. Further, the Court is mindful that the jury is permitted "substantial latitude" in computing the amount of damages to be awarded for pain and suffering. Silva v. Spooner, 692 A.2d 336, 336 (R.I. 1997) (order) (quoting Pimental v. Postoian, 121 R.I. 6, 12-13, 393 A.2d 1097, 1101 (1978)). Moreover, the Court shall not alter a jury's award for pain and suffering unless such a "demonstrable disparity exists between the amount assigned by the jury and the actual damage sustained [such] that the verdict is unresponsive to the controversy and fails to render substantial justice between the parties." Id. at 337 (quoting Hayhurst v. LaFlamme, 441 A.2d 544, 546-47 (R.I. 1982)). Further, the Court rejects the plaintiffs' contention that comparison between the awards to LaPierre and Teto is indicative of the jury's failing to do substantial justice between the parties.
Considering the evidence presented at trial, particularly noting that the quality of the plaintiffs' evidence was less than compelling, the Court is not persuaded that the jury was influenced by passion or prejudice, or that the award indicates that the jury proceeded from a clearly erroneous basis. The jury was thorough, mindful of the injury and its sequelae, and fair in its verdict. In this Court's opinion, the jury, in awarding the subject amounts of damages, absolutely responded to the merits and provided adequate compensation. Accordingly, the plaintiffs' Motion for a New Trial and or Additur is denied.
Counsel shall submit the appropriate order for entry.