DECISION
Douglas Bradley (Plaintiff) moves this Court for a new trial and/or additur pursuant to Super. R. Civ. P. 59, to which the Defendant objects. On March 10, 2003, the jury returned a verdict finding the Defendant 70 percent liable and the Plaintiff 30 percent liable for damages caused by the accident in the above-entitled negligence action.
 FACTS AND TRAVEL
An automobile accident between Douglas Bradley (Plaintiff) and Jean Gilchrist (Defendant) occurred in Cranston, Rhode Island on November 14, 1997. Defendant testified that she was traveling on Colonial Avenue when she came to a stop sign at the intersection of Colonial and Pontiac Avenues. She maintains that she came to a complete stop at the sign and looked both ways for oncoming traffic before proceeding into the intersection. When she attempted to complete a left-hand turn onto Pontiac Avenue, she collided with the plaintiff's vehicle. The Plaintiff contends that the Defendant ran the stop sign, causing his car to collide with the left side of the Plaintiff's vehicle.
Following the accident, the parties exchanged insurance information and gave statements to an officer of the Cranston Police Department. Neither party reported any injuries immediately following the accident. The Plaintiff, however, states that he began experiencing pain in his neck and shoulders later that evening. Four days later, on November 18, 1997, Plaintiff visited Kent County Memorial Hospital, where he underwent an examination of his neck and was billed $506.93.
The Plaintiff stated that as a result of his neck injury, he was unable to work on November 18th and 19th. He thereafter returned to work but reported experiencing pain in his neck and upper back toward the end of each workday. He subsequently visited Dr. David DiSanto from December 9, 1997 through May 7, 1998 for paravertebral injections totaling $1190.00, Dr. Barbara Hess from December 15, 1997 through February 19, 1998 for chiropractic care totaling $1290.00, and RI/Mass MRI on April 17, 1998 for an MRI of his cervical spine totaling $900.00. Additionally, Plaintiff sustained property damage to his vehicle in the amount of $870.00. Defendant testified that she sustained no injuries as a result of the accident and that damage to her vehicle was limited to a cracked directional cover.
A jury heard the matter on March 10, 2003 and found that the Plaintiff proved, by a fair preponderance of the evidence, that Defendant was negligent and that such negligence was the proximate cause of the accident. In apportioning comparative negligence, the jury determined that Defendant was 70 percent negligent and Plaintiff 30 percent negligent and found damages of $1000.00 for the Plaintiff. After applying the jury's finding of 30 percent negligence on the part of Plaintiff, the award came to $700 in damages, plus $446.69 in interest.
On March 19, 2003, Plaintiff filed the instant motion for a new trial and/or additur. Plaintiff argues that the jury's verdict was against the fair preponderance of the evidence and failed to administer substantial justice between the parties.
 STANDARD OF REVIEW
Rule 59 of the Rhode Island Superior Court Rules of Civil Procedure provides that
 "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury for error of law occurring at the trial or for any of the reasons for which trials have heretofore been granted in actions at law in the courts of this state. . . ." R.I. Super. R. Civ. P. Rule 59 (2002).
The role of the trial justice when reviewing a motion for a new trial is well settled in this jurisdiction. The trial justice, sitting as an extra juror, must "independently weigh, evaluate and assess the credibility of the trial witnesses and evidence." Graff v. Motta,748 A.2d 249, 255 (R.I. 2000) (quoting Morrocco v. Piccardi, 713 A.2d 250, 253 (R.I. 1998) (per curiam)). Upon consideration of a motion for a new trial, the trial justice acts as a "super juror," reviewing all the evidence in the light of his or her independent judgment. See Rezendesv. Beaudette, 797 A.2d 474, 477-78 (R.I. 2002). Although the trial justice need not "make an exhaustive analysis of the evidence or state all relevant conclusions about the weight of the evidence or the witnesses' credibility," Rucco v. Rhode Island Pub. Transit Auth.,525 A.2d 43, 45 (R.I. 1987), he or she must comment on the weight of the evidence and on the credibility of the witnesses. See Rezendes, 797 A.2d at 478. Further if the trial justice "determines that the evidence is evenly balanced or that reasonable minds could differ on the verdict," he or she should allow the verdict to stand. Id. Alternatively, upon a finding that "the verdict is against the preponderance of the evidence, and thus fails to do justice between the parties," the trial justice should grant the motion for a new trial." Id.
Further, a jury's damage award may be disregarded and a new trial granted "only if the award shocks the conscience or demonstrates that the jury proceeded from a clearly erroneous basis in assessing the fair amount of compensation to which a party is entitled. Dilone v. AnchorGlass Container Corp., 755 A.2d 818, 820-21 (R.I. 2000). However, an additur is a technique that may be used to reassess an erroneous damage award. Michalopoulos v. CD Restaurant, Inc., 764 A.2d 121, 125 (R.I. 2001). As such, it provides the trial justice with "a means of avoiding unnecessary relitigation of the same issues and will afford litigants just and speedier resolutions." Id. Thus, upon finding that a new trial is warranted on the question of damages, and before granting same, a trial justice must allow a defendant an opportunity to assent to an additur. Id.
 ALLEGATIONS OF ERROR
On appeal, the Plaintiff argues that (1) the jury erred as a matter of law in its failure to follow the Court's instructions, particularly in its failure to properly assess the credibility of the parties, particularly that of the Defendant; (2) the jury failed to weigh the evidence that the Plaintiff was at all times in his lane of travel and that the Defendant entered that lane; (3) the uncontradicted and clear evidence shows that the Defendant was in a hurry on the morning of the accident; (4) the jury should have found the Defendant's version of the accident not worthy of belief due to conflicts between her trial testimony and depositions; and (5) the jury failed to properly weigh the uncontradicted medical evidence which shows that all the Plaintiff's injuries were causally related to the accident.
In reviewing jury decisions, the Rhode Island Supreme Court has held that "if the evidence does not strongly preponderate against the jury verdict and the `evidence is sharply conflicting and is such that reasonable minds could reach different conclusions,' the trial justice should not overturn the verdict." Hefner v. Distel, 813 A.2d 66, 70 (R.I. 2003). Rhode Island Supreme Court has further noted that the drawing of inferences is for the jury in the first instance and that a finding based on such inferences should not be disturbed by the trial justice merely because she would have made a contrary finding on the same evidence. Conlin v. Greyhound Lines, 383 A.2d 1057 (R.I. 1978). It is well settled that absent a showing to the contrary a jury is assumed to have followed the instruction given it by the trial court. Palumbo v.Garrott, 188 A.2d 371 (R.I. 1963).
In the instant case, the Defendant, in a pre-trial deposition, testified that when she reached the intersection of Colonial and Pontiac Avenues, she
 ". . . came to a stop sign, and came to a complete stop, and looked both ways. No one was coming, so I pulled up into the lane a little because it's on a curve, so I had to look around the corner. So I looked, and then I proceeded forward, because I didn't see anyone coming. And then the other car and I collided." Tr. at 5.
At trial, the Defendant repeated her testimony about coming to a stop at the stop sign, looking both ways, proceeding to the center of the double line, and again looking both ways. She again stated that she did not see the Plaintiff's car until impact. See Defendant's Memo at 1-2. The Plaintiff testified that he had the right of way on Pontiac Avenue and did not see the Defendant prior to the collision.
The Court finds that the Defendant's description of the collision to be credible and persuasive. It was certainly within the jury's purview to find the Defendant the more compelling witness. After hearing the testimony and reviewing the evidence, it was entirely reasonable for the jury to conclude that both parties carried some responsibility for the collision. This Court does not find the jury's conclusion unreasonable or that it failed to follow the instructions of the trial judge.
On appeal, the Plaintiff also argues that the jury failed to consider that the Defendant was in a hurry while the Plaintiff remained in his travel lane at all times. Accepting those statements as true, however, does not necessarily negate the Plaintiff's liability for the accident. Although the Plaintiff had the right-of-way, he also testified that he did not see the Defendant's car until impact. The Plaintiff testified that he had been going approximately 15 miles per hour before he reached the stop sign at the intersection. Tr. at 13. He further testified that he proceeded cautiously while making the turn. The jury could have concluded that Defendant should have exercised more caution in terms of the speed of her vehicle, especially considering the inclement weather on the day of the accident.
The Plaintiff also argues that the jury did not weigh the medical evidence. However, simply introducing medical evidence causally linking the Plaintiff's injuries to the car accident does not compel the jury to accept that evidence in total. The charge for the emergency room on the November 18, 1997 visit amounted to $506.93. The jury could have accepted this evidence but been unconvinced that the subsequent treatments starting in December were causally related or necessary for the treatment of the Plaintiff's injuries. Although Dr. DiSanto and Barbara J. Hess, D.C. opined that Plaintiff's injuries were causally related to the accident, the Court finds that reasonable minds could differ regarding whether all the medical treatment was the result of the accident. As Plaintiff did not report to the Emergency Room until four days after the accident and he refused transport to the hospital at the time of accident, the evidence does not preponderate against the jury verdict. Here reasonable minds could draw differing conclusions, warranting the verdict to stand. See Hefner v. Distel, 813 A.2d 66, 69-70 (R.I. 2003).
 JURY INSTRUCTIONS
On appeal, the Plaintiff also argues that the Court committed an error of law when its instructions allowed the jury to consider comparative negligence. Plaintiff argues that the Defendant neither pled nor presented any evidence of comparative negligence.
Pursuant to Super. R. Civ. P 8(c), the failure to plead an affirmative defense in a timely manner constitutes a waiver of that defense. SeeDuquette v. Godbout, 416 A.2d 669 (R.I. 1980). Comparative negligence, however, is not an affirmative defense pled under either Rule 8(c) or the Rhode Island's comparative negligence statute. Furthermore, Rhode Island's comparative negligence statute does not require that comparative negligence be pled as an affirmative defense. The statute reads:
 "In all actions hereafter brought for personal injuries, or where personal injuries have resulted in death, or for injury to property, the fact that the person injured, or the owner of the property or person having control over the property, may not have been in the exercise of due care shall not bar a recovery, but damages shall be diminished by the finder of fact in proportion to the amount of negligence attributable to the person injured, or the owner of the property or the person having control over the property." R.I.G.L. § 9-20-4.
Plaintiff argues that because no evidence had been presented that established any negligence on his part, the jury should not have been permitted to consider comparative negligence. The Rhode Island Supreme Court has stated: "Our comparative negligence statute, § 9-20-4, is not a comparative fault statute. It comes into play only after negligence is first established on the part of both the plaintiff and the defendant." Calise v. Hidden Valley Condominium Association, 773 A.2d 834, 837 (R.I. 2001). At trial, however, there was evidence to establish negligence on the part of both parties. The Plaintiff and Defendant both made the same admission about not seeing each other's car until the point of impact. From this testimony, the jury could have inferred that both parties should have exercised more caution in their driving, particularly because of the snowy and wet weather on that day. In Hefner v. Distel, with respect to a new trial motion in a negligence action involving a collision between a motorcycle and a car, the Rhode Island Supreme Court stated:
 "The defendant testified that he looked both ways before proceeding into the intersection. Although he specifically looked at the driver of the cable truck and received a signal from him to pass through the intersection, the jury reasonably could have inferred
from the defendant's testimony that he looked to the left for any oncoming traffic. When approaching an intersection a motorist has the duty `of observing the traffic and general situation at or in the vicinity of the intersection. He [or she] must look in the careful and efficient manner in which a [person] of ordinary prudence in like circumstances would look in order to ascertain the existing conditions for his guidance.'" Hefner v. Distel, 813 A.2d 66, 70 (R.I. 2003) (quoting Dembicer v. Pawtucket Cabinets Builders Finish Co. 193 A. 622, 625 (R.I. 1937)). (Emphasis added.)
In the instant matter, the Defendant testified that she came to a full stop and approached the intersection cautiously. From this testimony, the jury could have inferred the Plaintiff should have exercised more caution and prudence in the control of his motor vehicle. Thus, the jury had before it evidence warranting an inference of negligence on the part of both parties. This Court finds its instructions regarding comparative negligence did not constitute an error of law.
 ADDITUR
The Plaintiff also moves for an additur. The Defendant argues that the jury's award of $1000 in compensatory damages does not respond to the merits and fails to administer substantial justice.
A trial justice may re-apportion liability by granting an additur if the trial justice finds "a demonstrable disparity between the jury's verdict and the damages sustained [such] that an additur [is] required in order to make the verdict truly responsive to the merits of the controversy and to achieve substantial justice between the parties."Silverio v. Sweetman, 109 R.I. 527, 528, 288 A.2d 265 (R.I. 1972). In the instant case, there is no such substantial disparity. The jury awarded the Plaintiff $1000 in damages. The award was large enough to cover significant portions of the medical bill of $506.93 for the Emergency Room visit on November 8, 1997; the lost wages of approximately $110 per day out of Plaintiff's weekly pay of $550.41; and the damages to his vehicle totaling $879. Although the Plaintiff presented evidence of more medical expenses starting in December, the jury may not have been convinced that they reflected damages proximately caused by the subject accident. Consequently, as the Plaintiff was found 30 percent negligent, this Court does not find demonstrable disparity between the jury's verdict and the damages allegedly sustained. Accordingly, Plaintiff's request for additur is denied.
 CONCLUSION
After thoroughly reviewing the evidence before it, this Court is satisfied that there are no errors of law warranting a new trial. Because reasonable minds could have differed, the verdict shall stand. The jury's verdict responds to the merits of the controversy and administers substantial justice. Accordingly, the Plaintiff's motion for a new trial/and or additur is denied.